712 So.2d 216 (1998)
AETNA CASUALTY & SURETY COMPANY
v.
STATE of Louisiana, Through The DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT; Parish of Assumption, Parish of Assumption Department of Public Works.
Leon J. THERIOT, Jr. & Barbara Theriot
v.
STATE of La., DOTD, Parish of Assumption, Dept. of Public Works.
Nos. 97 CA 0716, 97 CA 0717.
Court of Appeal of Louisiana, First Circuit.
April 8, 1998.
*217 Ms. Danna Schwab, Metairie, for Plaintiff/Appellee Aetna Casualty & Surety Company.
Mr. Karl Krousel, Baton Rouge, for Defendant/Appellant DOTD.
Mr. Vincent Fornias, Baton Rouge, for Defendant Parish of Assumption and Parish of Assumption Dept. of Public Works.
Mr. Ben Vega, Donaldsonville, for Plaintiff/Appellee Leon Theriot, et ux.
Before CARTER and FITZSIMMONS, JJ., and CHIASSON,[1] J. Pro Tem.
CARTER, Judge.
This is an appeal by the State, through the Department of Transportation and Development (DOTD) from a judgment of the trial court finding Leon Theriot 75% at fault and DOTD 25% at fault for a vehicular accident.

FACTS AND PROCEDURAL HISTORY
On June 2, 1990, Leon Theriot (Theriot) stopped at a bar known as "The Fuel Stop" located in Assumption Parish between 3:00 and 5:00 p.m. Theriot stayed at the bar drinking beer and visiting with friends until approximately 10:00 p.m., when he left the bar and drove on Highway 70 in the direction of his home in Pierre Part. Theriot estimated he had consumed ten to twelve beers while at the bar.
Theriot had been driving for approximately ten minutes when he approached a curve *218 in Highway 70 at milepost 31.9. As he entered the curve, he glanced to his left to see if a friend was home. At this point the right tires of his vehicle left the roadway. An eyewitness account estimated Theriot's vehicle only left the road for a second or a fraction thereof. Upon reentering the roadway, Theriot's vehicle crossed the centerline of Highway 70 and collided with a truck travelling east. The eastbound truck was driven by Albert Norton, Sr. (Norton). Norton, a truck driver for Total Transportation Services, Inc., was in the process of making a delivery to the Sunshine Bridge.
Theriot sustained lacerations across his head and neck, and an injury to his knee. A blood sample taken at Lakewood Hospital revealed Theriot's blood alcohol content to be.193 per cent. The emergency room records of Lakewood Hospital indicated Theriot had acute alcoholic intoxication when he was admitted following the accident. Another blood sample taken from Theriot approximately three hours after this accident was tested at the State Police Crime Lab and revealed a blood alcohol level of .12 per cent.
Norton sustained serious injuries; his back was broken in two places, his right leg required amputation below the knee, his left foot was crushed, and his right retina was ruptured, resulting in an 80% loss of vision in his right eye. At the time of trial he had undergone 33 surgeries in connection with his injuries. Norton was rendered disabled from his job as a truck driver, and all attempts to render vocational rehabilitation have been unsuccessful.
On March 14, 1991, Aetna Casualty & Surety Company (Aetna), the workers' compensation insurer of Total Transportation Services, Inc., filed suit against DOTD, the Parish of Assumption, and the Assumption Department of Public Works, seeking to recover benefits and medical expenses it paid on behalf of Norton for injuries sustained in the accident. Aetna alleged the accident was caused by the defective condition of Highway 70.
On May 31, 1991, Theriot filed a separate suit against DOTD and Assumption Parish seeking recovery for his personal injuries sustained in the accident. There was also a loss of consortium claim by Mrs. Theriot; however, it was not pursued at trial. The suits filed by Theriot and Aetna (plaintiffs) were consolidated on October 4, 1991. Norton did not file suit for his injuries.
Aetna amended its petition on December 6, 1991, and added Theriot and his insurer, State Farm Mutual Automobile Insurance Co. (State Farm), as defendants. State Farm filed a concursus proceeding, and deposited the policy limits of $10,263.22 into the registry of the court. An order signed on January 29, 1993, authorized Aetna to remove the funds deposited from the registry of the court by State Farm. On April 5, 1993, State Farm and Theriot were dismissed as defendants from the action by Aetna.
Trial on the merits was held on October 22-23, 1996. Judgment was rendered on December 18, 1996, in favor of Travelers' Insurance Company (successor to Aetna) against DOTD in the amount of $766,120.04, subject to a reduction of 75% because of the fault allocated to Theriot. The judgment against DOTD, after reduction of Theriot's fault, was $191,530.01 plus legal interest from the date of judicial demand.
DOTD appeals the judgment with the following assignments of error:[2]
1) The trial court committed manifest error in finding the State of Louisiana, through the Department of Transportation and Development, responsible in part for this accident, when the plaintiffs failed to meet the burden of proof as required by LSA-R.S. 9:2800.
2) The trial court committed manifest error in allowing plaintiff's expert to testify regarding the road's condition as it existed at the time of trial.
3) The trial court committed manifest error in finding the State of Louisiana, through the Department of Transportation and Development, was in any way or degree *219 responsible for this accident and subsequent damages.

LAW AND DISCUSSION
In order to prove liability of a public entity based on a defective condition of a bridge or roadway the plaintiff must prove custody or ownership of the defective thing by the public entity; the defect created an unreasonable risk of harm; actual or constructive knowledge of the defect or risk of harm and failure by the public entity to take corrective action within a reasonable time; and causation. Porter v. Ascension Parish Police Jury, 93-2166, pp. 2-3 (La.App. 1st Cir. 10/7/94); 644 So.2d 710, 711. The theory presented by the plaintiffs at the trial was that the difference in elevation between the roadway and the shoulder was unreasonably dangerous in that it caused vehicles leaving the roadway to "scrub" against the edge of the roadway, thereby prohibiting a safe reentry back onto the roadway. Plaintiffs alleged that Theriot's vehicle shot across the road and into Norton's lane as the result of his uncontrolled re-entry onto the roadway. Plaintiffs claim the accident was caused by the dangerous discrepancy in elevation between the roadway and the shoulder. The only factual evidence presented evidencing this theory was Theriot's own testimony, which indicated he had trouble getting his vehicle back onto the roadway after he went on the shoulder. We do not have oral or written reasons for judgment from the finding of 25% liability on the part of DOTD. However, we must conclude the trial court found Aetna proved all the previously listed elements for DOTD to be assessed with liability for the condition of the shoulder.
In our review of the case sub judice, we find the trial court erred in assessing DOTD with any liability in this case. We do not find the drop-off between the shoulder and the roadway constituted an unreasonably dangerous condition, nor do we find the drop-off caused or contributed to the accident.
In reviewing the evidence, we are guided by the manifest error-clearly wrong standard, which authorizes us to reverse a trial court's factual finding only if we find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993); Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Thus, the reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. Stobart v. State, Department of Transportation and Development, 617 So.2d at 882.
The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Stobart v. State, Department of Transportation and Development, 617 So.2d at 882. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Where two permissible views of the evidence exist, the fact finder's choice between them cannot be clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d at 882-83. However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Rosell v. ESCO, 549 So.2d 840, 844-45 (La. 1989).

Existence of an Unreasonably Dangerous Condition
A vice or defect is some flaw or fault inherent in the thing itself that creates an unreasonable risk of harm to another. Hardenstein v. Cook Construction, Inc., 96-0829, p. 9 (La. 1st Cir. 2/14/97); 691 So.2d 177, 184, writ denied, 97-0686 (La.4/25/97); 692 So.2d 1093. The unreasonable risk of *220 harm criterion requires the court to balance the likelihood and magnitude of harm against the utility of the thing, as well as a broad range of social, economic, and moral factors, including the cost to the defendant of avoiding the harm, and the risk and the social utility of the plaintiff's conduct at the time of the accident. The court must carefully consider all the circumstances surrounding the particular accident under review to determine whether allowing recovery to the particular plaintiff involved, for damages occurring in the particular manner in which the plaintiff was injured, is desirable from the standpoint of justice and the social utility of the conduct of the respective parties. Oster v. Department of Transportation and Development, 582 So.2d 1285, 1289 (La.1991).
The Louisiana Supreme Court recently resolved the disparity among the Courts of Appeal regarding the standard for reviewing findings of an unreasonable risk of harm. The First and Fourth Circuits applied the manifest error standard of review to the factual findings but not to the ultimate conclusion. See Green v. City of Thibodaux, 94-1000 (La.App. 1st Cir. 10/6/95); 671 So.2d 399, writ denied, 95-2706 (La.2/28/96); 668 So.2d 366; while the Third Circuit generally applied the pure manifest error standard. See Nichols v. Wal-Mart Stores, Inc., 97-265 (La.App. 3rd Cir. 7/2/97); 698 So.2d 53, writ denied, 97-2067 (La.11/14/97); 703 So.2d 628. In resolving this disparity, the supreme court rejected Green v. City of Thibodaux, 671 So.2d 399, and found the manifest error standard of review to be the proper standard. Reed v. Wal-Mart Stores, Inc., 97-1174, p. 3 (La.3/4/98); 708 So.2d 362. In so holding, the court stated:
In determining whether a defect presents an unreasonable risk of harm, the trier of fact must balance the gravity and risk of harm against the individual and societal rights and obligations, the social utility, and the cost and feasibility of repair. Boyle, 685 So.2d at 1083; Entrevia v. Hood, 427 So.2d 1146, 1149 (La.1983); Langlois v. Allied Chemical Corp., 258 La. 1067, 249 So.2d 133 (La.1971). Simply put: The trier of fact must decide whether the social value and utility of the hazard outweigh, and thus justify, its potential harm to others? W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 31 (5th ed.1984). The reviewing court must then evaluate the fact finder's determination under the manifest error standard of review.
97-1174, p. 5.
In the instant case, the trial court did not issue written or oral reasons, thus we have no indication of whether the risk-utility balance was considered. Therefore, we must consider the risk-utility balance concurrently with our analysis of whether the fact finder was clearly wrong in reaching its conclusion.
The drop-off between the shoulder and the roadway measured one-fourth of an inch where Theriot left the roadway and two and one-half inches where he returned. At some point along his off-road path, the drop-off increased to four inches; however, there was no evidence in the record of how far the four inch drop-off extended. Plaintiffs presented evidence of numerous work orders from DOTD regarding the shoulders along Highway 70; however, the work orders were not in the near vicinity of this accident. Furthermore, Theriot testified he had driven along this section of Highway 70 for the past ten years without incident.
Courts have consistently held that an abrupt drop-off between a roadway and a shoulder constitutes a defect. (Emphasis added). LeBlanc v. State, 419 So.2d 853, 856 (La.1982) (4-6 inch drop-off); Guzman v. State, 95 0957, pp. 6-7 (La.App. 1st Cir. 12/15/95); 664 So.2d 1343, 1348-49; Hood v. State, Through Department of Transportation and Development, 587 So.2d 755, 759 (La.App. 2nd Cir.), writs denied, 590 So.2d 81, 82 (La.1991) (4 inch drop-off); Perez v. State, Through Department of Transportation and Development, 578 So.2d 1199, 1204 (La.App. 4th Cir.), writ denied, 581 So.2d 706 (La.1991) (8 inch drop-off); Deville v. State, Through DOTD, 498 So.2d 1142, 1144 (La. App. 3rd Cir.1986) (1 3/4-6 3/4 inch drop-off); Grappe v. State, Dept. of Transportation and Development, 462 So.2d 1337, 1340 (La.App. 3rd Cir.), writ denied, 466 So.2d 1302 (La. 1985) (drop-off of "several inches").
*221 An implicit necessity for the use of a shoulder is a connection between the roadway and the shoulder which allows for safe, gradual movement from one to the other. Sinitiere v. Lavergne, 391 So.2d 821, 825 (La.1980). Prudent behavior for a motorist who inadvertently drives off the paved roadway onto the shoulder is first to reduce speed and then attempt a gradual reentry after the motorist has regained control of the vehicle. Guidroz v. State, Through Department of Transportation and Development, 94-0253, p. 4 (La.App. 1st Cir. 12/22/94); 648 So.2d 1361, 1364.
If shoulders were not present alongside roadways, a motorist who encountered a problem or unexpected situation requiring the use of the shoulder would not have a safe area on which to move his vehicle. The motorist would then be exposed to traffic in the lanes of travel, thus creating a hazard for every motorist using the highway.
In the present case, the shoulder alongside Highway 70 was aggregate,[3] not asphalt. The DOTD maintenance manual suggests shoulder maintenance when there is a drop-off of three inches or greater. An aggregate shoulder is susceptible to erosion and subsidence. For DOTD to maintain an aggregate shoulder even with the roadway would require constant maintenance, which would be very costly. We must also consider that a prudent motorist should not attempt to reenter the highway at an excessive rate of speed. The discrepancy in elevation between the highway and shoulder in the instant case presented no more of a challenge to a motorist than rolling over a speed bump. Based on the record before us, we find the difference in elevation between the highway and the shoulder was not an unreasonably dangerous condition. We find the trial court committed manifest error in concluding it was a dangerous condition under the facts of this case.

Causation
The initial inquiry is whether any causal relationship exists between the harm suffered by plaintiff and the defendant's alleged negligent conduct. Cause-in-fact is generally a "but for" inquiry; if the plaintiff probably would not have sustained the injuries but for the defendant's substandard conduct, such conduct is a cause-in-fact. Roberts v. Benoit, 605 So.2d 1032, 1042 (La.1991). In other words, the inquiry is whether the defendant's substandard conduct contributed to the plaintiff's harm. Hutzler v. Cole, 93-0468, p. 8 (La.App. 1st Cir. 3/11/94); 633 So.2d 1319, 1325, writ denied, 94-0850 (La.5/13/94); 637 So.2d 1070.
Theriot claimed when his vehicle left the road, he tried to steer back onto the roadway, but his vehicle would not "climb" and started to slide. According to Theriot, he did not use his brakes, but let his foot off the gas pedal. It was only after his vehicle hit a driveway that Theriot shot across the roadway and collided with Norton's vehicle.
However, Trooper Schexnayder testified there were tracks left by Theriot's vehicle that were clearly visible on the shoulder from the point he left the highway until he reentered the highway and made impact with the other vehicle. The location of the place where Theriot's vehicle left the roadway was pointed out to the officer by Jim Frost, an eyewitness to the accident. The tracks, as well as the tires of the vehicle, were examined by the officer. Trooper Schexnayder examined the tires of Theriot's vehicle and found no physical evidence, such as deterioration marks that would indicate the tires came into contact with the edge of the pavement. The tracks left by the vehicle also could be clearly followed, and indicated Theriot's vehicle left the roadway as easily as it entered, with no evidence the tires rubbed against the pavement. The Trooper's testimony made no reference to Theriot's vehicle *222 striking a driveway, or to tracks of the vehicle crossing a driveway.
Trooper Schexnayder did not make a notation on his report of any problems with the roadway or shoulder. He testified that State Police troopers are trained to note any shoulder defects, and to measure and photograph these defects. Trooper Schexnayder further testified that the State Police must report such defects to DOTD when they are discovered during an accident investigation; however, he testified there was no defect and therefore no report of any defect in this case. Trooper Schexnayder's investigation did not lead him to the conclusion the drop-off was a factor in the cause of the accident because the tracks on the shoulder did not indicate the right tires of Theriot's vehicle rubbed against the roadway.
Jim Frost, a completely disinterested eyewitness to the accident, testified he had followed Theriot for some distance immediately prior to the accident, and described Theriot's driving as "erratic." Frost explained that he initially overtook Theriot, who was travelling at a low rate of speed, only to be passed by Theriot shortly thereafter at a speed exceeding the posted limit of 55 miles per hour. Frost observed Theriot's vehicle leave the roadway as he entered the curve where the accident took place, and Frost noted Theriot failed to brake as he entered the curve. According to Frost, Theriot's vehicle left the roadway only for a "second, a fraction thereof." Frost did not observe Theriot's tires rubbing against the side of the road when the vehicle was on the shoulder.
From our review of the record, we cannot conclude that Theriot's accident was in any way caused by the drop-off between the shoulder and the highway. Not only do we find Theriot's testimony implausible on its face, but the physical evidence as testified to by both Trooper Schexnayder and Frost so contradict Theriot's version that a reasonable fact finder would have discredited Theriot's story. Although we note the drop-off between the shoulder and highway did reach four inches at some point along Theriot's path, there was no evidence presented which indicated the four inch drop-off played any part in this accident by creating an obstacle to Theriot's safe reentry. Theriot's version of the accident was completely contradicted by the physical evidence presented and the testimony of Trooper Schexnayder and Frost.
Theriot's vehicle was traveling at approximately 60 miles per hour when he entered the curve, and the tracks left on the shoulder indicated he traveled 141 feet before he reentered the roadway. The only conclusion we can reach is that the only contributing factors to this accident were Theriot's inattentiveness, excessive speed, intoxication, and overall failure to act as a prudent driver in attempting to steer his vehicle back onto the roadway. Theriot collided with Norton because he had oversteered his vehicle before he had regained proper control. Further, the investigating police officer made no mention of Theriot's vehicle striking a driveway before it reentered the highway, but testified the tracks indicated Theriot reentered the roadway as easily as he left it.

CONCLUSION
We find the trial court erred in assigning any liability to DOTD in this matter. Thus, we reverse the judgment of the trial court as it pertains to DOTD. This finding makes moot the other assignments of error raised by DOTD. For the above reasons, the decision of the trial court is reversed, with all costs assessed against the Traveler's Insurance Company.
REVERSED.
FITZSIMMONS, J., concurs, and assigns reasons.
FITZSIMMONS, Judge, concurring, with reasons.
The testimonial evidence of the trooper and the eyewitness, combined with the physical evidence, so completely contradicted and rebutted the allegation that the shoulder drop-off, defective or not, caused or contributed to the accident, that no reasonable factual basis existed for the trial court's finding. The record establishes that the finding was *223 manifestly wrong. Therefore, I respectfully concur.
NOTES
[1] Judge Remy Chiasson, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Although this opinion does not address each assignment of error individually, it disposes of all issues.
[3] According to Willie Taylor, Jr., the DOTD district engineer administrator for District 61, aggregate can be shell, gravel, crushed stone, or any number of materials that could be used on the roadway shoulder to build it. The record contains testimony that the shoulder was "shell" and other testimony the shoulder was "gravel." This discrepancy is not material to the final conclusion of the case. Suffice it to say that the shoulder was aggregate as opposed to asphalt or concrete.