^CARTER, J.
This is an appeal by the State of Louisiana, through the Department of Transportation and Development (DOTD) from a judgment assessing it thirty-five percent fault in a single vehicle automobile accident.
FACTS
On July 26, 1993, Ronald Greenlee was killed in an automobile accident at the Manchac Bridge on LA Hwy. 73. The accident occurred as Greenlee was driving northbound on LA Hwy. 73. According to the record, as Greenlee exited the bridge, he lost control of his 1980 Chevrolet truck after he encountered a dip in the roadway. After striking the dip, Greenlee’s vehicle ran off the roadway to his right, traveled some distance on the shoulder, came back across the roadway and struck a tree on the left side of the roadway. As a result of the vehicle’s impact with the tree, Green-lee was killed.
A wrongful death suit was filed by Greenlee’s widow, Kim Vicaro Greenlee, individually and on behalf of her minor children, Thomas Keelan Greenlee and Ka-telynn Anne Greenlee, against DOTD. The suit alleged the cause of the accident was the unreasonably dangerous conditions caused by the roadway, bridge, roadside, embankment, slope, and signage at the accident location.
Prior to trial, the parties stipulated that Ronald Greenlee’s blood alcohol level was 0.16%, and that the plaintiffs’ total damages were valued at $1,100,000.00 After a trial on the merits, the trial court allocated fault of sixty-five percent to Ronald Green-lee and thirty-five percent to DOTD. A judgment was granted in favor of the plaintiffs in the amount of $385,000.00 plus legal interest.
DOTD appeals the judgment of the trial court, asserting that the trial court erred *366 in allowing accident data to be introduced into evidence, and that the trial court committed manifest error in finding LA Hwy. 73 and the surrounding area created an unreasonably dangerous condition that caused and/or contributed to this accident.
DISCUSSION
A court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). The supreme court has announced a two-part test for the reversal of a factfin-der’s determinations:
1) The appellate court must find from the record that a reasonable factual basis does not exist for the'finding of the trial court, and
2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
Stobart, 617 So.2d at 882.
This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court’s finding. The reviewing court must review the record in its entirety to determine whether the trial court’s finding was clearly wrong or manifestly erroneous. Stobart, 617 So.2d at 882.
Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Stobart, 617 So.2d at 882. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart, 617 So.2d at 882.
The supreme court has recognized that “[t]he reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.” Stobart, 617 So.2d at 883. Thus, where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 883.
A vice or defect is some flaw inherent in the thing itself that creates an unreasonable risk of harm to another. The unreasonable risk of harm criterion requires the court to balance the likelihood and magnitude of harm against the utility of the thing, as well as a broad range of social, economic, and moral factors, including the cost to the defendant of avoiding the harm, and the risk and the social utility of the plaintiffs conduct at the time of the accident. The court must carefully consider all the | circumstances surrounding the particular accident under review to determine whether allowing recovery to the particular plaintiff involved, for damages occurring in the particular manner in which the plaintiff was injured, is desirable from the standpoint of justice and the social utility of the conduct of the respective parties. Aetna Casualty & Surety Company v. State, Through Department of Transportation and Development, 97-0716, 97-0717, pp. 6-7 (La.App. 1st Cir 4/8/98), 712 So.2d 216, 219-220, writ denied, 98-1241 (La.7/2/98), 724 So.2d 209. The determination of whether something posed an unreasonable risk of harm is reviewed under the manifest error standard of review. Reed v. Wal-Mart Stores, Inc., 97-1174, p. 5 (La.3/4/98), 708 So.2d 362, 365.
In reviewing the record and the trial court’s oral reasons for judgment, we note that the trial court found the presence of three defects, which include the dip in the roadway at the base of the Bayou *367 Manchac bridge; the condition of the shoulder on the right side of northbound LA Hwy. 73 leaving the bridge; and the presence of the tree in the DOTD right of way on the left side of northbound LA Hwy. 73.
James Clary was qualified as an expert in highway design, highway safety, and highway signing. According to Clary, the dip in the roadway at the base of the Bayou Manchac bridge was caused by soil subsidence. J.B. Ensard, a pavement and geotechnical design engineer for DOTD, testified that the maximum amount of settlement acceptable on an approach slab is four inches. However, when Clary surveyed the area, he determined that the dip measured approximately nine to ten inches deep, far exceeding the minimum acceptable deviation.
In reviewing the record, we note that immediately after motorists cross the Bayou Manchac Bridge, they are confronted with a sharp curve to their left. Photographs of the accident location reveal that the dip can be identified by the presence of oil and gauge marks. According to Clary, the dip allows oil to drop onto the highway because of the sudden jolt, and gauge marks are created when a vehicle encounters the dip and “bottoms out.”
Gail Herrington, a witness to Greenlee’s accident, testified that Greenlee’s vehicle started swerving when he got to the bottom of the bridge. According to Herring-ton, Greenlee’s vehicle first went to his left, into her lane of travel, and then to his | aright and off the roadway. Herrington testified that she frequently traveled that portion of LA Hwy. 73 and based on her own experiences, she felt that the dip in the roadway affected how fast she drove over the bridge and negotiated the sharp left curve. '
The plaintiffs also presented testimony from Mark Lott, who was involved in a similar type of accident at this same location. Lott, like Greenlee, was legally intoxicated at the time of his accident. However, Lott indicated on the night of his accident that he felt as if he were losing control of his vehicle as he encountered the dip in the roadway at the base of the bridge.
According to Clary, the original DOTD plans indicated a guardrail was supposed to be placed on both sides of the curve where Greenlee went off the roadway, but none was in place at the time of the accident. Clary indicated that AASHTO (American Association of State Highway and Transportation Officials) suggests guardrails are needed if an embankment is greater than 6 feet. In the instant case, the embankment is eighteen-twenty feet high where Greenlee’s vehicle initially left the roadway. Guardrails are also needed in this area because the shoulders measure only three feet wide. According to Clary, the minimum tolerable shoulders for traffic on this type of roadway is four feet. Clary indicated that there was simply not a hospitable area off the roadway for Greenlee to recover.
The record contains evidence on the concept of a forgiving roadside, specifically referred to as a clear recovery area by AASHTO manuals utilized by DOTD. AASHTO manuals indicate that when a vehicle leaves the roadway, the driver is no longer able to fully control the vehicle, thus an object in or near the path of the vehicle becomes a contributing factor to the severity of the accident. The clear recovery area requires a roadway border area starting at the edge of the traveled way. AASHTO studies indicate that on high speed highways, if there is relatively level traversible width of thirty feet from the edge of the traveled roadway, there is an eighty percent chance for vehicles that have left the highway to be safely stopped and returned to the highway. Clary stated that the tree struck by Greenlee violated this clear recovery area concept because the tree was located in the DOTD right of way.
IfiDr. Joseph David Blashke was accepted by the court an expert in the field of *368 highway design, traffic engineering, and accident reconstruction. Dr. Blashke testified that he did not think the dip at the base of the roadway presented a situation that needed to be addressed. According to Dr. Blashke, he drove over the dip and never felt as if he were losing control of his vehicle. Further, he opined that the dark spots on the highway where the dip was present was the result of oil bleeding up from the asphalt as opposed to vehicles dripping oil when they encountered the dip.
Dr. Blashke further testified that no national standards demanded guardrails in a curve such as this. He explained that placing a guardrail around a curve may redirect vehicles back into oncoming traffic, and the driver may have a tendency to drive closer to the centerline to, avoid the guardrail. Dr. Blashke disputed Clary’s testimony that the embankment was so steep as to require a guardrail. Dr. Blash-ke contended that the “as built” plans for this section of roadway did not call for shoulders, rather they indicate a thirty foot roadbed. However, we note that the present situation reveals the travel lanes are eleven feet wide, with three foot shoulders, falling short of the intended thirty foot roadbed.
After reviewing the evidence contained in the record, we find there is a reasonable factual basis for the trial court’s findings that there were defects present which contributed to the severity of Greenlee’s accident. We further agree with the trial court that such defects could have been easily and inexpensively remedied by placing asphalt in the dip and constructing a guardrail around the curve. Based on our review of the record, we cannot say the trial court’s findings were clearly wrong.
DOTD also contends that the trial court erred in allowing accident reports to be introduced into evidence. Specifically, DOTD objected to the introduction of plaintiffs exhibit 16-A, which contained accident reports of other accidents at or near this location. DOTD’s objection was based on 23 U.S.C.A. § 409 which provides:
Notwithstanding any other provision of law, reports, surveys, schedules, lists or data compiled for the purpose of identifying evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144, and 152 of this title or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds shall not be admitted into evidence in Federal or State court or considered for other purposes in any 17action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data.
We note that there was no showing that these accident reports were to be used for developing any highway safety construction improvement project. Furthermore, testimonial evidence regarding other accidents in this area was admitted without objection by DOTD. The plaintiffs presented testimony from Robert Ballard, State Trooper Futral, Mark Lott, and Gene Mock. Such testimony about prior accidents was clearly not prohibited by 23 U.S.C.A. § 409. Thus, we find the evidence of other accidents was properly admitted.
CONCLUSION
Based on our review of the record, we find the record clearly supports the decision of the trial court. Accordingly, the judgment of the trial court finding DOTD thirty-five percent at fault in the death of Ronald Greenlee is affirmed with costs of this appeal in the amount of $5,037.99 assessed against DOTD.
AFFIRMED.