11WOODARD, Judge.
The defendant, the Department of Transportation and Development (DOTD), appeals from an adverse judgment rendered in this negligence action brought by Kasey Lynn Ann Faye (Faye) when the car she was driving left the state gravel highway, fell into a ditch, and flipped over. The trial court found the DOTD to be 100% at fault and granted Faye awards for general damages, past med *1039 ical bills, future medical costs, and her three minor children’s losses of consortium. The DOTD suspensively appealed, and Faye answered, requesting an increase in the general damage award. We affirm.
FACTS
Faye was driving north one cold, clear morning on December 17,1993, in a 1989 Geo Spectrum, on Louisiana Highway 397 (Hwy.397) in Calcasieu Parish whenj¿the car she was driving went off the gravel road, dove into a ditch, and then flipped over.
Highway 397 is a 24r-foot wide, state roadway, consisting of gravel. The road texture is not uniform up and down the highway. Days before the incident on December 6, 13, 14, and 15, 1993, ninety-three tons of limestone were spread out in various places along the highway. At the time, the DOTD had compacting equipment in its possession but chose not to use it.
The one-vehicle accident took place in a rural area where the posted speed limit is 55 miles per hour; Faye’s speed was estimated to be 45 miles per hour. She was not the owner of the vehicle and had driven it about five times before. An occasional driver, Faye had last driven on this highway a month prior to the incident. Her driver’s license was expired at the time. Amber Simpson, the young child of her roommate, was also in the vehicle at the time of the accident. Faye sustained injuries to her neck, spinal cord, and teeth in the accident and was admitted to various hospitals before being transported to University Medical Center and then to New Orleans Charity Hospital, where she was released on December 26, 1993. She was assessed with a 27% permanent total disability.
On November 14, 1994, Faye brought suit against the DOTD, challenging its roadway maintenance methods and traffic control procedures and also filed suit on behalf of her three minor children for losses of consortium. After a two-day bench trial on December 17 and 18 of 1996, a judgment was rendered in her favor, attributing all of the fault to the DOTD. Faye received $276,858.10 in general damages, $11,141.90 in past medical bills, and $12,000.00 in future medical costs. Each of her three minor children received $15,000.00 for their losses of consortium. The DOTD suspensively appealed this judgment. In answering the appeal, Faye requested an increase in the general damage award.
ASSIGNMENTS OF ERROR
The DOTD asserts that the trial court erred in:
(1) Finding Faye free from fault which caused her accident.
(2) Failing to address the issue of whether DOTD’s conduct was a cause-in-fact of the December 17, 1993 accident, considering the depth of the gravel, warning signs, and grading/compacting.
(3) Awarding $12,000.00 as future medicals.
|3In her answer to the appeal, Faye claims that the judgment should be modified to increase the award of general damages to $400,000.00.
LAW
Failuee to Assess Fault to Faye
Because findings of fault are factual in nature, we will not disturb a trial court’s allocation of fault unless those findings were made under manifest error, which exists when there is no reasonable basis for the findings, and the findings are clearly wrong based on a review of the record in its entirety. Rosell v. ESCO, 549 So.2d 840 (La.1989).
In its first assignment of error, the DOTD asserts that the trial court had no reasonable factual basis for holding Faye free from any fault. It argues that if a factual conclusion is contrary to testimony that is uneontroverted, then, manifest error has occurred. In this case, the DOTD contends that the testimony of its expert, Marshall Lyles (Lyles), was the only one that addressed the cause (over steering) of the vehicle’s departure from the road, and as uneontroverted, makes the trial judge’s factual finding unreasonable.
We disagree. The trial judge’s assessment of fault was also based on the testimonies of State Trooper Michael Mallett, Dr. Edward *1040 Rhomberg, Faye, and her mother, Linda Faye, who all visited the site on the day of the accident; in contrast, Lyles viewed the accident site almost three years later. In addition, the evidence is uncontested that Faye was proceeding below the posted speed limit. She drove on the highway a month prior to the accident, but that was before the gravel was laid out. Further, Faye testified that she did not steer the car to the right and that the car was pulled into the ditch by the gravel.
Where such conflicts exist in the testimony, reasonable inferences of fact should not be disturbed upon review. Joiner v. Newberg Venture, 94-1583 (La.App. 3 Cir. 5/3/95), 657 So.2d 206. Further, great deference should be given to the trial court’s conclusions when they are based on the credibility of the witnesses. Mistich v. Volkswagen of Germany, Inc., 95-939 (La.1/29/96), 666 So.2d 1073. In fact, findings based on the credibility of testimony can “virtually never be manifestly erroneous or clearly wrong.” Rosell, 549 So.2d at 845. Because the trial court attached greater |4weight to the testimony of witnesses who promptly viewed the scene of the accident, we find no manifest error in its conclusion that the DOTD was solely at fault.
We also agree with the trial court that had Faye been warned of the loose gravel, then and only then, could contributory negligence have been imputed to her. This first assignment of error is without merit.
DOTD’s Conduct as Cause-in-Fact
In its second assignment of error, the DOTD claims that the trial court misapplied the law to the facts of this case by not addressing the issue of whether the DOTD’s conduct was a cause-in-fact of the accident. We are able to infer from the court’s reasoning that the trial judge did address this issue. Hence, we conduct our review of causation based on the manifest error standard.
In determining whether to impose liability under La.Civ.Code art. 2315, the following duty-risk analysis must be applied:
(1) Duty — Did the defendant owe a legal duty which encompassed the particular risk of harm to which plaintiff was exposed?
(2) Breach — Did the defendant breach that duty?
(3) Causation— Was the defendant’s conduct a cause-in-fact of the resulting harm?
(4) Damage — What damages were sustained?
Forest v. State, Through Louisiana Dept. of Transp. and Dev., 493 So.2d 563 (La.1986). Since the only element challenged is that of causation, we need only address that issue.
Because the cause-in-fact of an injury is a factual determination, we will not disturb it absent manifest error. Causation can be proved in many ways. If the defendant’s conduct was a substantial factor in bringing about the harm, then it is a cause-in-faet of the tort victim’s injuries. Dixie Drive It Yourself System New Orleans Co., v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962). A causal connection also exists when the plaintiff would not have suffered the damages but for the defendant’s substandard conduct. Guzman v. State, 95-957 (La.App. 1 Cir. 12/15/95), 664 So.2d 1343. In short, if the tortfeasor’s actions had something to do with the injuries sustained, then a causal relationship exists. Ayres v. Beauregard Electric Cooperative, Inc., 94r-811 (La.App. 3 Cir. 9/6/95), 663 So.2d 127, writ denied, 95-2432 (La.12/15/95), 664 So.2d 455.
The DOTD claims specifically that the cause-in-fact of Faye’s injury was her over steering and loss of control and not the depth of the gravel, the lack of a warning sign, or the lack of grading on the roadway, which were all considered by the trial court. We will review each of these factors.

Depth of Gravel

Although no one could ascertain the exact thickness of the gravel on Hwy. 397 on the day of the accident, its uneven, loose presence was quite obvious. The color photographs taken within hours of the accident show patches of thick loose gravel near the accident scene (Plaintiffs Exhibit 3, 4, 6, and 8). Also, State Trooper Mallett corroborated *1041 Faye’s testimony on page two of the accident report when he noted “loose surface material” as a “Roadway Condition.” Further, the DOTD was put on notice of this defect because it created the roadway condition.
It would also be reasonable to conclude that there was excessive loose gravel on the surface of the roadway from other circumstances. For example, because grading procedures were not followed in spreading the ninety-three tons of limestone onto the roadway, it would be rational to conclude that there might have been some resulting unevenness in the thickness of the gravel. Additionally, the testimony given by Dr. Rhomberg about this unevenness having the potential to cause one’s tire to veer to one side allows one to reach the same logical conclusion. Since it was debatable whether the roadway contained this defect,, any choice made by the trial court between the two permissible views cannot be clearly wrong. Hence, there was no manifest error in the trial court’s consideration of this factor in its causation determination.

Warning Signs

The DOTD’s duties to motorists consist of maintaining highways in a reasonably safe manner and adequately warning motorists of dangerous roadway conditions. State Farm Mutual Auto. Ins. Co. v. Slaydon, 376 So.2d 97 (La.1979). Yet, the DOTD contends that setting up warning signs to notify motorists of the upcoming gravel road would be useless in this instance. We disagree. Without a warning, a motorist who was driving according to the speed limit, as Faye was, could Rnot have expected the hard surface to suddenly become loose. Even if we were to accept Dr. Ned Walton’s statement that ‘You’d drive on it as a gravel road,” it is reasonable for a driver to expect the surface of a gravel road to be reasonably consistent. After all, who would expose motorists to a roadway that could not be safely driven under normal conditions, using an ordinary vehicle? Further, Hwy. 397 is a low volume road in a rural area, and as such, the DOTD could not have expected passing ears to be the ones to level out the patches of gravel that were laid out.
Whether any warning given is adequate depends on factors such as the nature and location of the road, speed, kind of vehicular travel, place at which the danger exists, and the general situation and circumstances surrounding it. Christ v. State of Louisiana, Through Dept. of Highways, 161 So.2d 322 (La.App. 3 Cir.). writ refused, 246 La. 82, 163 So.2d 358 (1964). In this case, no such warning was given. Because the gravel road was not graded and regraded properly, a “loose gravel” warning sign would have been helpful in alerting motorists to the changing surface textures, which went from being firm and compact to being loose and uneven.
By not placing warning signs near the highway, the DOTD also failed to follow its own internal procedures, as mandated by its Manual on Uniform Traffic Control Devices that the DOTD should respond to and repair “loose surface aggregate.”
We hold that had there been a warning sign, Faye would have been alerted to the fact that she was required to proceed with extraordinary caution, thereby avoiding the accident. The lack of warning rendered the roadway condition obviously dangerous, presenting an unreasonable risk of injury to a reasonably prudent motorist. Hebert v. Southwest Louisiana Elec. Membership Corp., 94-405 (La.App. 3 Cir. 2/27/95), 667 So.2d 1148, writ denied, 96-798 (La.5/17/96), 673 So.2d 608.
The trial court did not err in finding that the lack' of a warning sign contributed to Faye’s injury.

Grading/compacting

The DOTD offers many reasons for why it feels that it was not negligent in failing to grade and compact the highway before laying down the fresh gravel. It first point out that Hwy. 397 has ‘never been compacted. We find this desire to maintain the status quo hardly convincing. The DOTD also argues that the roadway did not have to be graded beforehand because not all roads can be hard surfaced. According to the DOTD, it would not be feasible to compact roads that are made up . of shell and gravel; ^instead, the roads “must be constantly maintained.” Even if we were to accept this alternative, the DOTD is still *1042 wrong because it did not properly maintain the surface of the roadway that was being worked on just days before the accident. Further, the unevenness of the gravel could not have been caused by traffic because Highway 397 is a low volume road. Faye testified that after the accident, thirty minutes had passed before another motorist had driven by. Moreover, the DOTD’s rationale is not consistent with the December 20, 1993 work order directing that the road be regraded.
By not grading and regrading the gravel road in question, the DOTD also failed to follow its own internal procedures as set out in Function 439 of its Maintenance Planning Manual, which lists compacting as the third step in the road maintenance process. The record is filled with testimony suggesting how the DOTD’s conduct was a substantial factor in bringing about this accident. For example, when Dr. Rhomberg was asked what the consequences were of not grading the roadway beforehand according to the function code, he responded “[t]hen you get an uneven thickness of the layer of gravel which is spread” which “creates unequal forces on the ... wheels of the automobile.” Thus, DOTD’s actions and inactions created unequal forces on Faye’s tires and caused the vehicle to veer into the ditch. Given the foregoing, we hold that it was reasonable for the trial court to have concluded that DOTD created a road hazard, thereby being a cause-in-faet of Faye’s resulting injuries. AWARDING $12,000.00 AS FUTURE MEDICALS
The last issue to be addressed is whether the trial court properly awarded $12,000.00 for future medicals based on the evidence presented. The DOTD contests the award because it finds the testimony of Dr. Frank Robbins (Faye’s expert medical doctor who specialized in emergency care and family practice and not neurology or neurosurgery or orthopedies) to be insufficient to establish the cost of any future surgery. In order to recover future medicals, one must establish them “with some degree of certainty, and awards will not be made in the absence of medical testimony as to the requirement for such expenses and their probable cost.” Rowe v. State Farm Mut. Auto. Ins. Co., 95-669 (La.App. 3 Cir. 3/6/96), 670 So.2d 718, 729, writ denied, 96-824 (La.5/17/96), 673 So.2d 611.
We disagree with the DOTD and find that there is sufficient evidence in the record to substantiate the award given to Faye for future medicals, given the existence of plates and screws in her neck, the scheduling of an upcoming EMG, and the ^numerous medications that she was taking as a result of her broken neck, C5-7 fusion, sprained right ankle, chipped teeth, scar on her left arm, left shoulder injury, and right arm numbness. As evident in Dr. Robbins’ testimony, Faye will most likely require further medical care, further surgery, and stronger pain medications.
If the DOTD were not satisfied with Dr. Robbins’ analysis, then it should have requested a second opinion. In addition, no testimony concerning the cost of any future medicals could be offered because the DOTD objected to its discussion twice at trial. In sustaining the objection, the court reasoned that it “would have to determine from the evidence that’s presented as to what is appropriate if it desires to make such an award ... I don’t think it’s appropriate to require him to tell the Court what the fees are when he’s not doing it.” We interpret this to mean that the trial court would exercise its discretion in calculating the amount. Given the record, the trial court did not abuse its discretion by awarding $12,000.00 for future medicals.
General Damage Award
Faye assigns the inadequacy of the general damage award as error. An appellate review of general damage awards mandates that we must first analyze the case for a clear abuse of discretion before considering whether the award is excessive or insufficient. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). This involves examining the individual circumstances of the particular case before looking at past awards given. Reck v. Stevens, 373 So.2d 498 (La.1979).
Based upon our review of the facts and circumstances peculiar to this case, we *1043 do not find that the award of $276,858.10 was an abuse of the trier of fact’s discretion. The record reflects that before the accident, Faye used to do volunteer work with her children’s school, jog, ride horses, play softball, jump on the trampoline, go bowling, play piggyback, and swim. After the accident, her personal activities and family relationships were affected. In addition to having two holes drilled in her head to hang bolts where 30-pound weights were hung in an attempt to stretch her spine back, Faye’s neck was operated on and her head was shaved in preparation for the three level fusion. She spent Christmas alone in 1993 and after all the surgery was completed, had to stay with her mother because she could no longer take care of herself or her three children; her husband was not around in 1993, and they divorced in 1994. She went back to work six months after her surgery, worked most of 1995, and most of 1996 19until October. She gained forty pounds and also began to have trouble sleeping. She is presently under the care of a physician for neck and arm pains and is receiving ongoing treatment. Her sole means of financial support now comes from her parents.
Faye’s request for an increase in the amount of general damages is based solely on the range of damages for injuries sustained in other eases. Courts have disapproved of the use of scales based on generically similar medical injuries. Reck, 373 So.2d 498. We are able to distinguish the cases cited by Faye to support her contention that she should have received at least $400,000.00. Some of the cases cited by her involved total, as opposed to partial, disability and involved different ramifications for the victim and his or her family. For example, the victim in one case was subjected to almost a hundred physical therapy treatments and had to see a neurological orthopedic surgeon on a regular basis, Hoffman v. Travelers Ins. Co., 587 So.2d 143 (La.App. 4 Cir. 1991), and another victim had continuous, excruciating medical problems in addition to having to take care of his wife who had been recovering fi’om cancer. Jenkins v. Kerr-McGee Corp., 613 So.2d 1097 (La.App. 3 Cir.), writs denied, 616 So.2d 701, 702 (La.1993).
Only when the award goes beyond that which a reasonable trier of fact could assess based on the particular injury and its effect on the particular person is an appellate court authorized to increase or decrease the amount of the award. Meche v. Wal-Mart Stores, Inc., 96-981 (La.App. 3 Cir. 3/5/97), 692 So.2d 544, writ denied, 97-0888 (La.5/9/97), 693 So.2d 760. Because the cases relied on by the trial judge awarded damages in the range of $125,000.00 to $400,-000.00, the award of $276,858.10 to Faye was within the trial court’s discretion. In light of this, we cannot award a higher amount.
After a thorough review of the record and the law, we find that the trial court’s decisions on liability, causation, future medicals, and general damages were clearly supported by the evidence and should not be disturbed.
CONCLUSION
For the above reasons, the judgment of the trial court is affirmed; all costs are assessed against the Department of Transportation and Development.
AFFIRMED.