746 So.2d 764 (1999)
Mary MADDOX, et al., Plaintiff-Appellee,
v.
CITY OF OAKDALE, Defendant-appellant.
No. 99-726.
Court of Appeal of Louisiana, Third Circuit.
November 3, 1999.
Writ Denied February 11, 2000.
*766 John Erwin Demoruelle, M. Rebecca Pierrotti, Kinder, for Mary Maddox, et vir.
Dannie P. Garrett, III, Baton Rouge, for City of Oakdale.
Gregory Dwayne Maricle, Mandeville, for Aetna Cas. and Sur. Co.
BEFORE: YELVERTON, SAUNDERS, AND GREMILLION, Judges.
SAUNDERS, Judge.
This matter arises from a motor vehicle accident that occurred on March 25, 1993. Mary Maddox and David Houston Maddox sued Wesley Brown (Brown) and the City of Oakdale (City), for damages sustained due to the accident. Brown was later dismissed from the suit. Mary Maddox continued with the suit against the City.
The trial court assessed Brown with twenty-five percent fault and the City with seventy-five percent fault. The trial court awarded Mary Maddox $271,320.20 in damages. Mary Maddox's husband, David Houston Maddox, (Mr. Maddox), obtained an award of $56,250.00 for loss of consortium. The City appeals. We affirm.

FACTS
At 9:39 a.m. on March 25, 1993, retired officer Sam Fields reported a malfunctioning light at the intersection of North 13th Street and 7th Avenue in Oakdale, Louisiana. Subsequently, at 11:15 a.m. on the same day, there was a collision between Mary Maddox's (Plaintiff) vehicle and Brown's vehicle at the intersection of the malfunctioning light. As both drivers entered the intersection, Plaintiff had a green light and the light facing Brown was inoperable. Brown slowed, looked both ways and proceeded. Upon proceeding through the intersection, Brown struck Plaintiff's vehicle.
Plaintiff suffered injuries as a result of the accident. She was treated by Dr. Osborne, a family practitioner, and Dr. Mary Mayeaux, an orthopedic surgeon. Dr. Mayeaux diagnosed Plaintiff with rotator cuff impingement tendinitis in her left shoulder. In September 1993, Plaintiff underwent surgery for the injuries she suffered. *767 Plaintiff returned to light duty work in November 1994. Subsequently, Plaintiffs orthopedic physician declared Plaintiff disabled and unable to continue employment as a home health nurse's aide. Dr. Mayeaux moved to another town and Plaintiff received treatment from Dr. Douglas Waldman, an orthopedic surgeon. Dr. Waldman expressed concern that Plaintiff had experienced continual pain for the past year and referred her to Dr. Miguel Garcia, a rheumatologist. Dr. Garcia diagnosed Plaintiff with fibromyalgia.
Plaintiff and Mr. Maddox sued the City and Brown for damages sustained because of the accident. Brown was later dismissed. Plaintiff proceeded with the suit against the City, alleging that the City's fault was the sole cause of the accident.

LAW AND ANALYSIS

I. Proximate Cause
Defendant's first assignment of error is that the trial court erred in finding liability, without considering whether the alleged fault of the City was a proximate cause of the accident. Since the defendant in the instant case is a public entity, La.R.S. 9:2800 is applicable. See Lee v. State, Through DOTD, 97-0350 (La.10/21/97); 701 So.2d 676.
According to La.R.S. 9:2800, Plaintiff must prove: (1) the City had custody of the traffic light; (2) the traffic light was defective because it had a condition that created an unreasonable risk of harm; (3) the City had actual or constructive notice of the defect and failed to take corrective measures within a reasonable time; and (4) the defect was the cause-in-fact of Plaintiffs injuries. The critical issue in this case is whether the City's traffic light caused Plaintiffs injuries.
It is not disputed that the City had custody over the traffic signal at the intersection of North 13th Street and 7th Avenue. The traffic light was malfunctioning for several hours and created an unreasonable risk of harm because it presented one lane of traffic with a green light. The light controlling the other lane of traffic was not functioning. Thus, the traffic light was defective.
The record clearly indicates that the City had actual notice of this defect. According to Sam Fields, he reported the inoperable light at 9:00 a.m. Fields' testimony was corroborated by the dispatch log that stated, "9:39 006 advised green light E side out13th and 7th Avenue." Hence, the City had notice of the inoperable light and failed to take corrective measures within a reasonable time.
The City argues that Fields' testimony is not credible. However, on appellate review, issues of credibility are governed by the manifest error standard and the trial courts findings are given great deference. Rosell v. ESCO, 549 So.2d 840 (La.1989). Moreover, Fields' testimony is corroborated by the City's dispatch log.
The final element in La.R.S. 9:2800 is causation. The trial judge addresses this element by stating the following:
In the present case, the City of Oakdale was negligent in failing to dispatch an officer to control traffic at the intersection after it had notice of the faulty traffic light. Further, the city also acted negligently in failing to remedy the defective light although it had ample opportunity to do so. Both of these acts were substantial factors in bringing about the accident, and the Court finds that the acts were causes-in-fact of the subject accident and resulting injuries to Petitioners.
Causation can be divided into two elements: (1) cause-in-fact and (2) legal or proximate cause. See FRANK L. MARAIST AND THOMAS C. GALLIGAN,, LOUISIANA TORT LAW 77 (1996). Conduct is a "cause-in-fact" of an injury if it is a substantial factor in bringing about the plaintiffs injury. Guilbeau v. St. Landry Parish Police Jury, 600 So.2d 859 (La.App. 3 Cir.), writ denied, 606 So.2d 544(La.1992). This is a *768 factual issue and cannot be disturbed by the reviewing court absent manifest error. Faye v. State, DOTD, 97-512 (La.App.3 Cir. 10/29/97); 702 So.2d 1036, writ denied, 97-2974 (La.2/6/98); 709 So.2d 741.
To determine whether the conduct was the proximate cause, we must determine if: "as a matter of policy, does society want to allow this plaintiff to recover from this defendant for these particular damages arising in this particular manner?" MARAIST AND GALLIGAN, at 78. We answer that question in the affirmative. The City had a duty to protect Plaintiff from a driver who failed to stop at the City's malfunctioning light. The failure of the City to remedy the malfunctioning traffic signal and/or its failure to dispatch an officer to the scene created an undue risk of harm to traffic at the intersection. The City has a duty to maintain traffic signals and that duty includes the prevention of accidents such as that which occurred herein. The City's failure to perform this duty was, therefore, a concurrent proximate cause of the accident, produced by a combination of the City's acts and Brown's acts.
The City, in its argument, refers to the case of Hayes v. City of New Orleans, 527 So.2d 1002 (La.App. 4 Cir.1988). In Hayes, the Fourth Circuit held that the motorist's failure to stop at the malfunctioning light was the proximate cause of the victim's injuries rather than the municipality's malfunctioning light. However, the City's reliance upon Hayes is misplaced. The cases controlling this factual situation in this circuit are: Istre v. Fidelity Fire & Casualty Insurance Co., 628 So.2d 1229 (La.App. 3 Cir.1993); Hardy v. State, Through Department of Highways, 404 So.2d 981 (La.App. 3 Cir.), writ denied, 407 So.2d 741 (La.1981); and Gaspard v. Stutes, 380 So.2d 201 (La.App. 3 Cir.1980). These cases involved malfunctioning traffic lights and negligent drivers. In all three cases, this court allocated a percentage of fault to the municipalities because of their negligent conduct.

II. Allocation of Fault
The second assignment of error is that the trial court erred in failing to use Istre to guide in the apportionment of fault. The trial court assessed the City with seventy-five percent fault and Brown with twenty-five percent fault.
The allocation of fault is a factual issue determined by the trier of fact. Thus, the manifest error rule is applicable. Clement v. Frey, 95-1119 (La.1/16/96); 666 So.2d 607. The case of Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967 (La.1985), sets forth five factors in determining the allocation of fault. The factors include:
(1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) extenuating circumstances which might require the actor to proceed in haste, without proper thought.
Id. at 974.
In the case sub judice, the trial judge allocated seventy-five percent of the fault to the City. It is clear from the record and applicable jurisprudence that the City had a duty to maintain traffic signals. Considering the Watson factors, we agree with the trial court that a majority of fault rests with the City. Brown's vehicle collided with the Plaintiffs vehicle because the light was inoperative. The City was aware of the malfunctioning traffic signal for nearly two hours and was equally aware of the danger it posed. Nevertheless, the City failed to dispatch someone to the scene. The City's failure to respond to the malfunctioning light created a substantial risk to Plaintiff and other drivers. The actor with the superior capacity was the City because it had notice of the malfunctioning light. The City failed to act and no extenuating circumstances were preventing *769 the City from sending an officer to control the traffic. Thus, the trial court's allocation of fault is not erroneous.

III. General Damages and Loss of Consortium
The third assignment of error is that the trial court erred in awarding $150,000.00 in general damages to Plaintiff and $75,000.00 in loss of consortium to Plaintiff's husband, Mr. Maddox. The City asserts that if Istre is used to determine liability, it should also be used in determining damages.
The role of an appellate court in reviewing awards of general damages is not to decide what it considers an appropriate award, but to review the exercise of discretion used by the trial court. Andrus v. State Farm Mut. Auto. Ins. Co., 95-0801 (La.3/22/96); 670 So.2d 1206. Each case is different, and the facts and circumstances particular to the case should determine the adequacy or inadequacy of the award under consideration. The discretion vested in the trier of fact is great, so that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
Plaintiff has been diagnosed with a severe and disabling shoulder injury and fibromyalgia. The City admits that the shoulder injury was clearly related to the accident. However, the City asserts that the fibromyalgia was not caused by the accident, thus, Plaintiff's award should be reduced. However, in personal injury cases, there is a rebuttable presumption that a disability resulted from the accident if there is evidence of the injured person's good health before the accident and medical testimony showing a reasonable possibility that the accident caused the disability. Arceneaux v. Howard, 633 So.2d 207 (La.App. 1 Cir.1993), writ denied, 93-3128 (La.2/11/94); 634 So.2d 833; 94-2112 (La.9/2/94); 643 So.2d 152.
Before the accident, Plaintiff was in good health. After the accident, Plaintiff was initially diagnosed with rotator cuff impingement tendinitis in the left shoulder. Plaintiff was under a doctor's care for three years. During that time, she underwent physical therapy, but the physical therapy failed to relieve Plaintiff's pain. Therefore, Plaintiff was forced to undergo a surgical procedure for the injured shoulder. It is clear from the record that Plaintiff did not have any problems with her shoulder and was in good health before the accident.
The record also contains medical testimony showing a reasonable probability that the accident resulted in Plaintiff's problems with fibromyalgia. Dr. Garcia, in his deposition, stated that fibromyalgia could be caused by the pain associated with an automobile accident. He emphasized that if Plaintiff suffered continual pain from the date of the accident until her 1995 appointment with him, then it is possible that Plaintiff's fibromyalgia was caused by the accident. Dr. Garcia refused to make an exact diagnosis on this issue because he did not have access to Plaintiff's previous medical records. However, we have access to all of Plaintiff's medical records and it is apparent from those records that Plaintiff suffered continual pain from the date of the accident until her 1995 visit with Dr. Garcia. Moreover, Dr. Garcia, in his deposition, concluded that Plaintiff would continue to have pain associated with the fibromyalgia.
Thus, the record indicates that the shoulder injury resulted in Plaintiff being permanently disabled and triggered a number of other medical conditions, including fibromyalgia. These injuries prevent Plaintiff from participating in normal activities of life. Under the circumstances, the trial court's award of general damages to Plaintiff was not erroneous.
Similarly, the trial court's award of loss of consortium to Mr. Maddox was not erroneous. The trial court awarded *770 Mr. Maddox $75,000.00 in loss of consortium and the City is liable for $56,250.00 of that amount. In reviewing loss of consortium awards, the trier of fact is given much discretion and will not be overturned on appeal in absence of manifest error. Doucet v. Doug Ashy Bldg. Materials, Inc., 95-1159 (La.App. 3 Cir. 4/3/96); 671 So.2d 1148.
To prove a claim for loss of consortium, Mr. Maddox must prove three things: (1) liability of the City, (2) his spouse's damages, and (3) his consequent loss of consortium damages. Peck v. Wal-Mart Stores, Inc., 96-645 (La.App. 3 Cir. 11/6/96); 682 So.2d 974.
As discussed above, we find that the City and Brown are liable for the damages Plaintiff incurred. These damages resulted in a loss of consortium for Mr. Maddox. In Bellard v. South Central Bell, 96-1426 (La.App. 3 Cir. 8/27/97); 702 So.2d 695, 707, writ denied, 97-2415 (La.12/12/97); 704 So.2d 1202, this court described loss of consortium by stating: "Loss of consortium is more than just a loss of general overall happiness, it also includes love and affection, society and companionship, sexual relations, the right of performance of material services, the right of support, aid, and assistance, and felicity."
According to Mr. Maddox's testimony, the accident and Plaintiffs resulting injuries have affected their marriage. Due to Plaintiffs constant pain, the couple is unable to participate in pre-accident activities such as gardening and visiting family and friends. Before the accident, Plaintiff maintained the house and purchased groceries. Now, Mr. Maddox does most of the household chores and must help Plaintiff in purchasing groceries. Moreover, due to Plaintiffs pain and inability to sleep, the couple do not share a bedroom and sexual relations have been reduced. Considering these facts, the trial court did not err in its award of loss of consortium.

IV. Future Lost Wages
The fourth assignment of error is that the trial court erred in awarding $190,000.00 in future lost wages. The City asserts that testimony from a vocational counselor is required to determine Plaintiffs disability. The City relies on the case of Jones v. Trailor, 636 So.2d 1112 (La.App. 4 Cir.1994), writ denied, 94-1337 (La.9/16/94); 642 So.2d 193. However, the Jones case is not controlling in this circuit. The controlling standard is set forth in Veazey v. State Farm Mutual Automobile Insurance., 587 So.2d 5 (La.App. 3 Cir. 1991), and Aisole v. Dean, 574 So.2d 1248 (La.1991)
"To obtain an award for future loss of wages and/or loss of earning capacity, a plaintiff must present medical evidence which indicates with reasonable certainty that there exists a residual disability causally related to the accident." Aisole, 574 So.2d at 1252. Additionally, in Veazey, 587 So.2d at 7, (citations omitted), we stated:
A claim for loss of earnings need not be proven with mathematical certainty, but only by such proof as reasonably establishes plaintiffs claim. This may consist only of plaintiffs testimony if considered credible by the trier of fact.
. . .
Before an appellate court can disturb a quantum award, the record must clearly reveal that the trier of fact abused its discretion in making the award. An award made by the trial court may not be modified unless it is unsupported by the record. The appellate question is not whether a different award may have been more appropriate, but whether the trial court's award can be reasonably supported.
Medical evidence indicates with a reasonable certainty that there exists a residual disability causally related to the accident. Dr. Waldman expected Plaintiffs condition to be permanent and that Plaintiff had reached maximum medical improvement. *771 In his deposition, Dr. Waldman declared Plaintiff disabled from her current occupation as a nurse's aid. Moreover, Dr. Waldman stated that Plaintiff could work in other areas but her choice of jobs were limited. For example, Dr. Waldman stated that Plaintiff must refrain from doing overhead work, forward or side-to-side work, lifting more than ten pounds, and lifting items above chest level. It is evident from this testimony that Plaintiff has a residual disability related to the accident. Due to these limitations, we find that the trial court's award is supported by the record and is not an abuse of discretion.

V. Proffered Testimony
The fifth assignment of error is that the trial judge court in relying on Dr. Derbe's proffered testimony. However, the City failed to indicate in its brief whether the trial court relied on the proffered testimony in denying the motion for a new trial or in assessing general damages. Thus, we will address both issues.
The granting of a new trial based on discretionary grounds is within the discretion of the trial court and its action will not be disturbed on appeal unless it clearly appears that the trial court abused its discretion. La.Code Civ.P. art.1973; Perkins v. Fontenot, 548 So.2d 369 (La.App. 3 Cir.1989).
Our review of the record suggests that the trial court did not rely on Dr. Derbe's proffered testimony in denying the City's motion for a new trial. The trial court did indicate that reliance upon the City's expert, Dr. Derbe, did not help the City's case but, in doing so, the trial court only emphasized that the City's case was lacking and that its award to the Plaintiff was justified. Thus, the trial court clearly did not abuse its discretion in this matter.
In the alternative, if the City is asserting that the trial court relied upon Dr. Derbe's proffered testimony in determining Plaintiff's general damages, we find that this argument is without merit. There is no indication from the judgment or the record that the trial court relied upon Dr. Derbe's testimony and the City has failed to show any such reliance. The trial court indicated that he relied upon the testimony of Dr. Waldman in assessing general damages. Thus, this assignment is without merit.

VI. Recusal
The sixth assignment of error is that the trial judge erred in not recusing himself based on a prior relationship with Plaintiff's key witness, Sam Fields. La. Code Civ.P. art. 151 set forth the mandatory and permissive grounds of recusal. In the instant case, the applicable provision is La.Code Civ.P. art 151(B), which states:
B. A judge of any court, trial or appellate, may be recused when he:
. . .
(5) Is biased, prejudiced, or interested in the cause or its outcome or biased or prejudiced toward or against the parties or the parties' attorneys to such an extent that he would be unable to conduct fair and impartial proceedings.
In the case sub judice, the trial judge represented Mr. Fields in a class action suit, while he was a practicing attorney. Mr. Fields was one of the many plaintiffs in the suit. Before the conclusion of the lawsuit, Mr. Fields fired the trial judge and sought the services of another attorney. According, to the trial judge, the relationship between him and Mr. Fields was not "harmonious." In light of these facts and the language of Article 151(B)(5), we do not find grounds for recusal.

VII. Appellees' Answer: Increase Damages
The Plaintiff and Mr. Maddox assert that the trial court erred in his award of general damages. In reviewing awards of general damages, the appellate court must determine whether the trial court abused its discretion. Andrus, 670 So.2d 1206. *772 We do not find an abuse of discretion in the trial court's award of general damages.

DECREE
For the reasons expressed, we affirm the judgment of the trial court. All costs of appeal are assessed to defendant, the City of Oakdale.
AFFIRMED.