691 So.2d 359 (1997)
Patsy A. HUGHES, Plaintiff-Appellant,
v.
Myron B. BAILEY, Jr., M.D., Defendant-Appellee.
No. 29314-CA.
Court of Appeal of Louisiana, Second Circuit.
April 2, 1997.
*360 Patsy A. Hughes, in Proper Person.
David E. Verlander, for Defendant-Appellee.
Before MARVIN, C.J., and WILLIAMS and STEWART, JJ.
STEWART, Judge.
Patsy A. Hughes sued Dr. Myron B. Bailey, Jr. for medical malpractice. The trial court rendered judgment in favor of the defendant. Plaintiff appeals, asserting that she proved all elements of her claim, that the trial court made several substantive and procedural errors, and the assessment of costs and expert fees are an abuse of discretion. We affirm.

FACTS
On December 24, 1990, while attending a family gathering, Patsy Hughes injured her right pinky finger. She was taken to the emergency room at West Carroll Memorial Hospital, and seen by a Dr. Guinigundo. An x-ray revealed two fractures of the right pinky. Dr. Guinigundo splinted her finger and advised Mrs. Hughes to seek the treatment of an orthopaedic specialist. Dr. Guinigundo recommended a physician in Bastrop. Mrs. Hughes sought a specialist in Monroe.
On December 26, 1990, Mrs. Hughes saw Dr. Bailey at his office. Hughes was a current patient of Dr. Rifat Nawas, the defendant's partner at a minor emergency clinic that they both operated. Mrs. Hughes came as a walk-in patient. She brought the x-ray taken at West Carroll. Based upon this film, Dr. Bailey determined his method of treatment. She suffered from two fractures. One was a proximal phalangeal fracture that was angulated, and the second was a small non-displaced fracture of the middle phalanx. Dr. Bailey performed his standard management that consisted of: manipulating the fracture, correcting the position, and immobilization. The fracture site was prepped with betadine, then Dr. Bailey administered a local injection of anesthesia at the fracture site, and he performed a closed manipulation. Dr. Bailey took additional x-rays from which he determined that the deviation of fracture site had been corrected. The second fracture site did not require manipulation. Dr. Bailey splinted the finger, and buddy-taped it to the adjacent finger. He requested that Mrs. Hughes return in twelve to fourteen days.
Mrs. Hughes returned on January 14, 1991. Again, Dr. Bailey x-rayed her hand. *361 The first fracture was healing properly. However, the second fracture at the middle phalanx was displaced 2-3 millimeters, and the fracture site, as well as the entire finger had a considerable amount of soft tissue swelling. Dr. Bailey diagnosed a partially healed fracture of which the subchondral bone and joint were aligned. According to the records from the Orthopaedic Clinic, Dr. Bailey noted that Hughes may have additional problems with her finger. He stated that had the second fracture been displaced initially, surgery may have been his top option. However, he decided to splint the finger since it was three weeks post trauma. Dr. Bailey determined that surgery was not a present option due to the expense and the associated risks: loss of motion, potential of infection, or nerve injury. Dr. Bailey made an appointment for Mrs. Hughes on February 11, 1991. She did not appear.
Mrs. Hughes sought review of Dr. Bailey's treatment. She convened a medical review panel. The panel consisted of three physicians William L. Overdyke, Clinton McAlister, and Edward L. Anglin. The attorney chairperson was Larry Arbour. On May 26, 1993, the panel issued an opinion. They concluded that the evidence failed to support the conclusion that Dr. Bailey failed to meet the applicable standard of care in his treatment of Patsy Hughes. After Dr. Bailey performed the reduction, x-rays of her finger while splinted revealed a satisfactory position of the fractures of the proximal phalanx and middle phalanx.
While the panel convened, Mrs. Hughes was represented by counsel. On August 26, 1993, Hughes, in proper person, filed a petition at the district court for damages. On April 18, 1996, seven days before trial, she sought the issuance of subpoenas for the three physicians. The physicians received the subpoenas 1 and one-half to two days before trial. Two physicians notified the trial court of scheduling conflicts and they were excused.
The trial was held on April 25, 1996. Mrs. Hughes listed but failed to call several family members and friends. Also, she listed all physicians on the medical review panel. As a result, the only persons that testified were the plaintiff, defendant, and Dr. McAlister. The trial court offered Hughes additional time to take the physicians depositions. Hughes declined on the record. At the close of taking evidence, the trial court ruled that plaintiff failed to carry her burden of proof, and there had been no deviation from the standard of care. The trial court entered judgment for the defendant. Costs and a $500.00 expert witness fee with tax, subject to a credit of $300.00, for Dr. McAlister was assessed against the plaintiff. Plaintiff appeals.

ASSIGNMENTS OF ERROR
Plaintiff-appellant lists several assignments of error for this court's review. The defendant-appellee has addressed plaintiff's assignments classifying them as substantive or procedural. For the sake of clarity, this court will similarly address Hughes' assignments.

SUBSTANTIVE:
1. The trial court erred in determining that the plaintiff failed to prove the degree of knowledge, skill, or care exercised by physicians licensed to practice in Louisiana.
2. The trial court erred in finding that Hughes failed to prove her case since the defendant and an additional physician testified that surgery was an option, which could have resulted in a better outcome.

PROCEDURAL:
1. The trial court erred in not continuing the trial, or holding the record open for the testimony of Drs. Anglin and Overdyke.
2. The trial court erred when it failed to place Drs. Anglin and Overdyke in contempt of court for failing to appear as subpoenaed.
3. The trial court erred in assessing costs to Hughes.
4. The trial court erred in ruling from the bench rather than taking the case under advisement.

LAW
La.R.S. 9:2794 provides in pertinent part:

*362 A. In a malpractice action based on the negligence of a physician ... the plaintiff shall have the burden of proving:
(1) ... [W]here the defendant practices in a particular speciality and where the alleged acts of medical negligence raise issues peculiar to the particular medical speciality involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians ... within the involved medical speciality.
(2) That the defendant either laced this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
La.R.S. 9:2794 places upon the medical malpractice plaintiff the burden of proving by a preponderance of the evidence (1) that the doctor's treatment fell below the standard of care expected of a physician in his medical speciality, and (2) the existence of a causal relationship between the alleged negligent treatment and the injury sustained. White v. McCool, 395 So.2d 774 (La.1981); Coffin v. Louisiana State University Agricultural and Mechanical College, 620 So.2d 1354 (La.App.2d Cir.1993).
A physician is required to exercise that degree of skill ordinarily employed under similar circumstances by others in the profession and also to use reasonable care, diligence, and judgment. Hastings v. Baton Rouge General Hospital, 498 So.2d 713 (La. 1986). A physician is not required to exercise the highest degree of care possible. Rather, his duty is to exercise the degree of skill ordinarily employed by his professional peers under similar circumstances. The law does not require absolute precision from a physician. A physician's conduct and professional judgment must be evaluated in terms of the reasonableness under the existing circumstances and should not be viewed in hindsight and in terms of results or in light of subsequent events. Iseah v. E.A. Conway Memorial Hospital, 591 So.2d 767 (La. App.2d Cir.1991), writ denied 595 So.2d 657 (La.1992).
Expert witnesses who are members of the medical profession are necessary sources of proof in medical malpractice actions to determine whether the defendant doctor possessed the requisite degree of skill or knowledge, or failed to exercise reasonable care and diligence. Martin v. East Jefferson General Hospital, 582 So.2d 1272 (La.1991).
A reviewing court will give great deference to the findings of fact when medical experts express different views, judgments, and opinions on whether the standard of care was met in any given case. The reviewing court must give great weight to the factual findings of the trier of fact. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Rosell v. ESCO, 549 So.2d 840 (La. 1989).

MEDICAL TESTIMONY
Two physicians testified at the trial. First, Dr. Bailey testified. He diagnosed two fractures. The first fracture was an angulated displaced fracture of the proximal phalanx. The second was a fracture of the middle phalanx that went into the joint. He decided that the appropriate treatment would be manipulation of the first fracture, and since the second fracture was laying almost anatomic he assessed that it did not require manipulation only protection. He splinted the finger and requested Mrs. Hughes to return in 12 to 14 days. She returned three weeks later.
An additional x-ray determined that the first fracture was healing well. The second fracture had become minimally displaced. It was not displaced on the x-ray of December *363 26. Mrs. Hughes questioned Dr. Bailey on why he refused to perform surgery. He testified that the joint had partially healed three weeks post manipulation. A surgical procedure would merely be an additional trauma, with potential complications. There was no guarantee that she would receive the same result as achieved through manipulation and splinting. Hughes failed to return on February 11. Therefore, he was unable to continue treatment.
Second, Dr. Clinton G. McAlister testified. Dr. McAlister is an orthopaedic surgeon with a sub-specialization in surgery of the hand. Dr. McAlister was not qualified as an expert in orthopaedics, but the court stated that they were inclined to consider him as one. He testified that putting a pin in Hughes' finger would have added more stability. However, if he had a patient with the same injury he would not have operated. Surgery could have resulted in additional injury or trauma to the finger since the bones of the proximal phalanx are small and the ability to deal with them without injuring them is difficult. Also, surgery would have resulted in marginal improvement in mobility. The reduction achieved did get the bones in appropriate position for these fracture fragments. Regardless of the method of reduction, it is likely that there might be some limitation of motion in the joint. In his opinion, Dr. Bailey's treatment of these fractures were well within the standard of care for orthopaedic surgeons.

DISCUSSION

SUBSTANTIVE ASSIGNMENTS OF ERROR
First, the plaintiff contends that the trial judge erred in ruling that she failed to meet her burden of proof. At the conclusion of the evidence, the trial court stated the applicable burden of proof. Dr. Bailey is a specialist. Therefore, Hughes had the burden of proving three things by a preponderance of the evidence. First, Dr. Bailey's treatment of Mrs. Hughes' finger fell below the standard of care expected of a physician in his medical speciality. Second, Dr. Bailey either lacked a reasonable degree of knowledge or skill, or failed to use reasonable care, diligence and judgment in treating the fractures of her finger. Third, as a proximate result of Dr. Bailey's lack of knowledge or skill, or failure to exercise a proper degree of care, Hughes suffered injuries which she would not have other wise incurred. The trial court concluded that Hughes failed to prove any of these three things.
Mrs. Hughes failed to present expert medical testimony which established the standard of care expected of an orthopaedic surgeon in his locality. Rather, she appeared confused on what was the applicable law for medical malpractice. At the close of the plaintiff's case in chief, the Court and plaintiff held the following discussion:
By the Court: Miss Hughes, do you understand that in this case and as in all cases the Court is required to base its decisions on the law and the evidence?
By Mrs. Hughes: Yes, sir.
By the Court: We've all heard the evidence here today. Do you have any idea what the law is on medical malpractice?
By Mrs. Hughes: No, sir, I don't.
Obviously, Hughes was unaware of the burden she was required to meet in order to prevail. She failed to establish her burden of proof, and the trial court did not err in stating so.
This assignment of error is without merit.
Second, plaintiff argues that the trial court erred in finding that she failed to prove her case since Drs. Bailey and McAlister testified that surgery was an option which may have resulted in a better outcome. A physician is not required to exercise the highest degree of care possible, nor is he held to an absolute standard of precision. A physician's conduct must be reasonable under the circumstances existing at the time. Iseah, supra. Both physicians testified that surgery was an option. However, each physician succinctly explained why surgery was not and should not have been the first approach towards Mrs. Hughes' finger.
Dr. Bailey testified that he diagnosed two fractures. One needed manipulation and the second, laying near anatomic, required only *364 protection. He manipulated the finger, and the x-rays showed that the finger was in appropriate position. Mrs. Hughes did not return in the 12-14 days requested, but waited three weeks. At the subsequent x-ray the second fracture was displaced. He chose to splint the finger and wait to determine its success. Dr. Bailey rationalized that the risk of surgery, coupled with the expense could not guarantee the same or better result as manipulating.
Dr. McAlister agreed with Dr. Bailey's treatment. Surgery was an option, but would have resulted in additional trauma, without the guarantee of a better outcome. He testified that he had better patient results when the finger had been splinted. Dr. Bailey's treatment was well within the standard of care for an orthopaedic surgeon.
This assignment of error is without merit.

PROCEDURAL ASSIGNMENTS OF ERROR
First, appellant contends that the trial court erred in not continuing the trial, or keeping the record open for additional testimony. Continuances are regulated by La. C.C.P. art. 1601-1605. The trial judge must consider the particular facts in each case in deciding whether to grant or deny a continuance. Some factors to consider are diligence, good faith and reasonable grounds. Gilcrease v. Bacarisse, 26,318 (La.App.2d Cir.1994) 647 So.2d 1219,1221.
Appellant applied for the physician's subpoenas seven days prior to the trial. The subpoenas were delivered one and one-half to two days prior to the trial. Two of the physicians scheduled to appear were located in Shreveport. Mrs. Hughes made no attempt to provide accommodations for them. The trial was held on April 25, 1996. The court stated for the record that it would keep the case open until May 28, 1996. Mrs. Hughes could then submit Drs. Anglin and Overdyke's depositions, and file them for the court's review. Opposing counsel agreed to do them by telephone, eliminating some of Mrs. Hughes' expense. At the close of her case, Mrs. Hughes chose not to submit the additional depositions. The court explained to her that she may close her case, or wait until May 28th when she filed the deposition. Mrs. Hughes chose to close her case in chief. The trial court did not abuse its discretion by not granting the appellant a continuance.
This assignment is without merit.
Second, appellant contends that the trial court erred when it failed to place Drs. Anglin and Overdyke in contempt of court for failing to appear as subpoenaed. La. C.C.P. art. 1357 provides in pertinent part:
A person who, without reasonable excuse, fails to obey a subpoena may be adjudged in contempt of the court which issued the subpoena. The court may also order a recalcitrant witness to be attached and brought to court forthwith or on a designated day.
The subpoenas were issued close to the trial. Mrs. Hughes did not question the physicians' failure to appear. She did not object or express any discontent with the lack of the physician's attendance. As the appellee argues in his brief, Mrs. Hughes waived Dr. Anglin's appearance when she decided to close her case, and decided against taking the depositions. The trial court did not abuse its discretion.
This assignment is without merit.
Continuing, Mrs. Hughes argues the court erred in assessing costs to her. Hughes was ordered to pay cost and an expert witness fee to Dr. McAlister fixed by the trial court in the amount of $500.00. The trial court granted Mrs. Hughes a credit in the amount of $300.00 for sums she paid as witness fees and mileage when she applied for the subpoenas. Cost and expert fees may be imposed as the court considers equitable. See La.C.C.P. art. 1920 and La.R.S. 13:3666. The trial court did not abuse its discretion.
This assignment of error is without merit.
Last, the appellant contends that the trial court erred when it ruled from the bench rather than taking the case under advisement. La.C.C.P. art. 1637 states that the trial court may rule immediately or take the case under advisement. Three people testified at the trial: Dr. Bailey, Mrs. Hughes, and Dr. McAlister. Both the plaintiff *365 and opposing counsel had ample opportunity for direct and cross-examination. Several portions of the plaintiff and defendant's depositions were aloud. Clearly, the trial court had opportunity to review all evidence and make a reasonable conclusion. The trial court did not abuse its discretion.
This assignment of error is without merit.

DECREE
The trial court's judgment is affirmed. Costs of this appeal are assessed against the appellant.
AFFIRMED.