772 So.2d 686 (2000)
Cecil Lee TAYLOR, et al.
v.
Dr. J. Lane SAULS.
Kay Crain, et al.
v.
Dr. J. Lane Sauls.
No. 99-1436.
Court of Appeal of Louisiana, Third Circuit.
September 6, 2000.
Writ Denied December 8, 2000.
*687 R. Scott Iles, Lafayette, LA, for Plaintiffs/Appellees, Cecil Lee Taylor, Melva Jean Boyett, Martha Varnell.
Scott Westerchil, Tillman, Anderson & Westerchil, Leesville, LA, for Plaintiffs/Appellees, Kay Crain, Mary B. Van Orden, Bettie Folsom, Billie Jo Chamblee, John Rayburn.
Patrick J. Briney, Briney & Foret, Lafayette, LA, for Defendant/Appellant, Dr. J. Lane Sauls.
M. Keith Prudhomme, Woodley, Williams, Boudreau, Norman, Brown & Doyle, LLC, Lake Charles, LA, for Intervenor/Appellant, Louisiana Patient's Compensation Fund, Louisiana Patient's Compensation Fund Oversight Board.
*688 Court composed of Judge NED E. DOUCET, Jr. C.J., Judge ULYSSES GENE THIBODEAUX, Judge JOHN D. SAUNDERS, Judge JIMMIE C. PETERS, and Judge MARC T. AMY.
SAUNDERS, J.
Cecil Taylor, Kay Crain, Mary B. Van Orden, Bettie Folsom, Billie Jo Chamblee, John Rayburn, Melva Jean Boyett, and Martha Varnell (Plaintiffs) filed suit against Dr. J. Lane Sauls (Defendant) asserting that his substandard care of their wife and mother resulted in her death. A jury found in favor of Plaintiffs awarding damages to both the decedent's husband and her children. However, fault was also apportioned to the decedent and her husband. Defendant, Sauls, and the Louisiana Patients' Compensation Fund (LPCF), appeal that determination. Plaintiffs have answered the appeal seeking an increase in the fault apportioned to Defendant as well as an increase in the wrongful death damages awarded to the decedent's children.

FACTUAL AND PROCEDURAL BACKGROUND
This matter stems from the July 22, 1994 death of Mildred Taylor. Plaintiffs allege that on that date, Mrs. Taylor fell on her back while exiting a hair salon. She was accompanied by her husband, Cecil Taylor, who, with others, assisted Mrs. Taylor to the couple's vehicle. Mr. Taylor drove his wife to the office of her physician, Dr. J. Lane Sauls, a general practitioner board certified in family practice.
Mrs. Taylor, who was seventy-eight years old at the time and suffered from osteoporosis, arrived at Dr. Sauls' office and was taken into the office in a wheelchair. Plaintiffs allege that, despite Dr. Sauls knowledge that Mrs. Taylor hit her back on the steps to the salon, she was only "momentarily evaluated" by him and that only an anterior chest x-ray was performed. This x-ray revealed no problems. Plaintiffs concede that Dr. Sauls advised Mrs. Taylor that she should go to the hospital for overnight observation, but that she refused. Dr. Sauls argues that he repeatedly advised Mrs. Taylor to go to the hospital, where additional x-rays could have been taken, but that she was adamant in her refusal and her desire to go home. However, Mr. Taylor testified that Dr. Sauls did not repeatedly advise Mrs. Taylor to go the hospital and he failed to convey the seriousness of Mrs. Taylor's condition. Mr. Taylor also testified that while at Dr. Sauls' office Mrs. Taylor was unable to stand up or walk. Upon leaving Dr. Sauls' office, Mr. and Mrs. Taylor made two stops before arriving home. Mrs. Taylor sat in the car during these stops.
Mr. and Mrs. Taylor returned home where, later that evening, Mrs. Taylor collapsed while being assisted from a chair. Although neighbors performed CPR until an ambulance arrived, Mrs. Taylor was transported to the hospital where she did not respond to treatment and was pronounced dead. At the request of the family, an autopsy was performed revealing a fracture around the area of the second thoracic vertebrae. The pathologist performing the autopsy observed that hemorrhage was present.
On November 20, 1995, Mr. Taylor, along with Melva Jean Boyett and Martha Varnell, daughters of Mrs. Taylor, filed a petition instituting this matter and alleging Mrs. Taylor's death was caused by the "malpractice and negligence of Dr. Lane Sauls in failing to appropriately diagnose and treat Mildred Taylor due to the various injuries sustained as a consequence of her fall in Beauregard Parish, Louisiana." They sought damages for Mrs. Taylor's wrongful death. Additionally, on January 2, 1996, Mrs. Taylor's other children, Mary B. Van Orden, Bettie Folsom, Billie Jo Chamblee, and John Rayburn, filed a separate suit against Dr. Sauls alleging malpractice and also seeking damages related to their mother's death. The two matters were consolidated and proceeded to trial.[1]
*689 A jury returned a verdict in favor of Plaintiffs, finding that Dr. Sauls had breached the applicable standard of care and that this breach was the cause of Mrs. Taylor's death. Fault was apportioned as follows:

Dr. Sauls 63%
Mildred Taylor 35%
Cecil Lee Taylor 2%

As wrongful death damages, Mr. Taylor was awarded $250,000.00, while each child was awarded $10,000.00.[2]
Dr. Sauls appeals, assigning the following as error: 1) The trial court erred in denying his motion for a continuance due to the unavailability of a member of the Medical Review Panel; 2) The trial court erred in denying his motion in limine to exclude the testimony of Plaintiffs' expert who was not qualified to testify regarding the applicable standard of care; 3) The jury erred in finding that sufficient evidence was presented to establish the applicable standard of care; 4) The jury erred in finding that he breached the applicable standard of care, and that the breach was the cause of Mrs. Taylor's death; 5) The damages awarded to Mr. Taylor are excessive; and, 6) The trial court erred in failing to award a credit for payments made by other insurers. The Louisiana Patient's Compensation Fund (LPCF) has appealed as well and, like Defendant, argues that the deposition testimony of Plaintiffs' expert should have been excluded, that the jury erred in finding a breach of the applicable standard of care and that breach was the legal cause of Mrs. Taylor's death, and that the trial court erred in failing to credit the defendant for payments made by other insurers. The LPCF also argues that the $10,000.00 awards to the children were excessive.
The Plaintiffs in each of the separate actions have filed answers seeking an increase in the damages awarded to Mrs. Taylor's children and an increase in the fault apportioned to Dr. Sauls to 100%.

LAW AND ANALYSIS

MOTION FOR CONTINUANCE
In his first assignment of error, Defendant argues that the trial court committed reversible error in denying a continuance sought prior to trial. Defendant indicates that one of the members of the Medical Review Panel, Dr. John Hearn, became ill, was hospitalized, and was not available for trial. However, the trial court denied the request for a continuance. Defendant contends that Dr. Hearn had been subpoenaed and that he was a crucial witness both as a member of the Medical Review Panel and as an expert since he would have offered expert testimony in his role as a family practitioner in Leesville, Louisiana.
Plaintiffs respond that the trial court could correctly determine that Dr. Hearn's testimony was unnecessary due to the availability of the remaining panel members, and their testimony "was sufficient to the administration of fair justice for the case to proceed barring some other evidence that Dr. Hearn was somehow crucial to this case. No such showing was offered or made." Further, Plaintiffs contend that this issue is a moot point since Dr. Hearn has since died and that "even if the defense were correct that error was committed or even reversible error was committed, nothing can be done with respect to the availability of Dr. Hearn's testimony."
La.R.S. 40:1299.47(H) provides:
Any report of the expert opinion reached by the medical review panel shall be admissible as evidence in any action subsequently brought by the claimant in a court of law, but such *690 expert opinion shall not be conclusive and either party shall have the right to call, at his cost, any member of the medical review panel as a witness. If called, the witness shall be required to appear and testify. A panelist shall have absolute immunity from civil liability for all communications, findings, opinions and conclusions made in the course and scope of duties prescribed in this Part.

(Emphasis added).
While we are without benefit of a transcript of arguments heard regarding the motion to continue, the minutes reflect that, during the jury selection process, the following occurred:
Outside of the presence of the Jury Venire, a discussion was held concerning the appearance of a witness, Dr. Hearn who has been hospitalized and unable to appear. Counsel for defendant moves for a continuance. Argument is presented. For oral reasons assigned, the Court denies the continuance to which counsel objects and the objection is noted in the record.
We affirm the trial court's denial of Defendant's motion for continuance. La. Code Civ.P. art. 1602 provides:
A continuance shall be granted if at the time a case is to be tried, the party applying for the continuance shows that he has been unable, with the exercise of due diligence, to obtain evidence material to his case; or that a material witness has absented himself without the contrivance of the party applying for the continuance.
(Emphasis added).
The moving party has the burden of showing he met the requisites set forth in Article 1602. Armstrong v. State Farm Fire and Cas. Co., 423 So.2d 79 (La.App. 1 Cir.1982) "The trial judge must consider the particular facts in each case in deciding whether to grant or deny a continuance." Hughes v. Bailey, 29,314, p. 8-9 (La.App. 2 Cir. 4/2/97); 691 So.2d 359, 364. Moreover, the trial court should also consider the effect a continuance would have on the administration of justice. Lambert v. Heirs of Adams, 325 So.2d 331 (La.App. 3 Cir.1975), writ denied, 329 So.2d 458 (La. 1976).
We conclude that, under the particular facts present, the refusal to grant a continuance in this matter was not an abuse of the trial court's discretion. It is clear that under La.R.S. 40:1299.47(H) "[e]ither party shall have the right to call ... any member of the medical review panel as a witness." However, the right to call a witness is not synonymous with the absolute right to be present. That right is modified by Article 1602 which provides that the witness has to be material to one's case.
In our review of the record, Defendant failed to show that Dr. Hearn's testimony was material. In reaching this conclusion, we note that the opinion of the Medical Review Panel was admitted into evidence and the remaining two panelists, one of whom was a general practitioner as was Dr. Sauls, did testify. Accordingly, the trial court did not err in denying Defendant's motion for continuance.

EXPERT TESTIMONY
In his second assignment of error, Defendant asserts the trial court erred in denying his motion in limine to exclude Dr. Kenneth Haskin's deposition. Defendant argues that Dr. Haskin is not qualified to give testimony regarding the applicable standard of care. Defendant argues that the "locality rule" is applicable, thus, Dr. Haskin, a board certified internist who practices in Niceville, Florida, was not qualified to testify concerning the standard of care of a licensed physician in DeRidder, Louisiana or in southwest Louisiana.
The trial judge, in addressing Defendant's objection to Dr. Haskin's testimony, ruled that Dr. Sauls was not a specialist, thus the "locality rule" applied in determining the requisite standard of care. Further, the trial judge stated: "[n]ow, with *691 respect to Dr. Haskin's testimony, it's my opinion that this is a situation where there is sufficient overlap in the disciplines of internal medicine and the area of general practice that it is appropriate for Dr. Haskin to testify in this case."
La.R.S. 9:2794, in pertinent part, provides: "[t]he degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians ... licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances..."
In Hunter v. Bossier Medical Ctr, 31-026, p. 14 (La.App. 2 Cir. 9/25/98); 718 So.2d 636, 644 the court stated:
[T]he qualification of an expert witness rests within the sound discretion of the trial judge and his determination will not be disturbed absent manifest error. Generally, the fact that a medical doctor is not a specialist in a particular field applies only to the effect on the weight to be given such testimony, not to its admissibility. Tyler v. Richardson, 476 So.2d 899 (La.App. 2 Cir.1985), writ denied, 478 So.2d 907 (La.1985); Chatelain v. U.S. Fidelity & Guar. Co., 495 So.2d 379 (La.App. 3 Cir.1986), writ denied, 498 So.2d 756 (La.1986).
The supreme court in Sam v. XYZ Ins. Co., 489 So.2d 907 (La.1986), rehearing denied, 491 So.2d 382 (La.1986).
held:
[T]he testimony of a physician who practiced in a similar neighboring community was relevant evidence which should have been admitted and considered on the issue of whether the patient proved, among other elements, the degree of knowledge or skill possessed by or the degree of care ordinarily exercised by physicians in a similar community or locale and under similar circumstances, even though the physician did not practice or have knowledge of practice in the same community.

(Emphasis added).
Plaintiffs presented testimony indicating that the communities of Niceville, Florida and DeRidder, Louisiana were similar and the hospitals in both communities were similar in size. Defendant fails to present any evidence contradicting this testimony. More importantly, the record indicates that Dr. Sauls' general practice and Dr. Haskin's internal medicine practice involved overlapping procedures and concepts. Dr. Otis Biggs, a member of the Medical Review Panel, testified that "[t]here is overlapping ... obviously, from internal medicine and family practice, a great deal of overlapping." (Emphasis added). At issue in the instant case is the care given to an elderly patient, such as Mildred Taylor. Dr. Haskin's testimony indicates that in his internal medical practice, he serves as the primary care physician for adults and elderly patients. Given the totality of these facts and the broad discretion given to the trial court in admitting expert testimony, we cannot say that the trial court erred in admitting Dr. Haskin's testimony.

INSUFFICIENT EVIDENCE TO ESTABLISH THE STANDARD OF CARE
In their third assignment of error Defendants, Saul and LPCF, assert the "jury committed reversible error by finding that the Plaintiffs established by preponderance of the evidence the degree of knowledge or skill possessed by a physician practicing general practice medicine." The sole basis of this assignment of error is the exclusion of Dr. Haskin's testimony. Defendants assert that he was not qualified to testify regarding the standard of care in DeRidder, Louisiana. As discussed in the previous assignment of error, we find that the trial court did not commit manifest error in admitting Dr. Haskin's testimony. Defendants presented the testimony of the medical review panelists, Dr. Biggs and Dr. Gregory Lord, both concluded *692 that Defendant did not breach the standard of care.
"When the experts' opinions are in conflict concerning compliance with the applicable standard of care, the trial court's determinations on this issue will be granted great deference. It is the sole province of the trier of fact to evaluate the credibility of such experts and their testimony." Magos v. Feerick, 96-686, p. 5-6 (La.App. 3 Cir. 12/26/96); 690 So.2d 812, 816, writ denied, 97-0755 (La. 5/1/97); 693 So.2d 737; (Citation omitted). In the instant case, the jury accepted Dr. Haskin's testimony.
In his deposition, Dr. Haskin established the standard of care by relying on the facts given by Mr. Taylor, Mrs. Taylor's medical history, and the fact that she fell on her back onto concrete steps. Dr. Haskin testified that Dr. Sauls should have conducted a complete physical examination covering at least nine organ systems, an assessment, and a treatment plan. Dr. Haskin also testified that under the circumstances, a neurological exam was "virtually mandatory" and that "an upper back, thoracic and cervical x-ray were mandated." Considering Dr. Haskin's testimony, we find that Plaintiffs established the requisite standard of care.

BREACH OF STANDARD OF CARE AND LEGAL CAUSE
Defendants, Sauls and LPCF, assert that the jury erred in finding that Dr. Sauls' treatment breached the standard of care and that his breach was the legal cause of Mildred Taylor's death.
This court in Johnson v. Lake Charles Mem'l Hosp. 96-1178, p. 2-3 (La.App. 3 Cir. 3/5/97); 692 So.2d 514, 516, writ denied, 97-0891 (La. 5/9/97); 693 So.2d 760 outlines the standard of review and states:
This court may not set aside the jury's findings of fact in the absence of manifest error or unless those findings are clearly wrong, and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review. Rosell v. ESCO, 549 So.2d 840 (La.1989). Where there are two permissible views of the evidence, the factfinder's choice between these views cannot be manifestly erroneous. Id. Credibility calls are the function and prerogative of the trial court. Bruno v. Harbert Intern. Inc., 593 So.2d 357 (La.1992). An appellate court must review the record in its entirety to determine whether the findings of the trier of fact are clearly wrong or manifestly erroneous. Stobart v. State Department of Transportation and Development, 617 So.2d 880 (La.1993).
"[I]f the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La.1990); (Citation omitted).
Although, Dr. Sauls and his nurse testified that a thorough examination was conducted, Mr. Taylor disagreed and provided a different version of events. The jury accepted Mr. Taylor's version of the facts and the jury's findings regarding conflicting testimony and witness credibility should not be disturbed on review. Rosell v. ESCO, 549 So.2d 840 (La.1989).
Based on the facts that Mr. Taylor provided, and Mrs. Taylor's severe osteoporosis, Dr. Haskin concluded that Dr. Sauls breached the applicable standard of care. According to Dr. Haskin's, Dr. Sauls failed to conduct a neurological exam and X-rays of the upper back, thoracic and cervical areas. According to Dr. Haskin's testimony, these procedures were virtually mandatory considering the fall onto concrete steps and Mrs. Taylor's medical history. It is clear from the record that none of these procedures were conducted. Thus, we find that the jury's findings concerning the breach of the standard of care are reasonable.
*693 Defendant also asserts that Dr. Sauls' breach was not the legal cause of Mrs. Taylor's death. In countering this assertion, Plaintiffs refer to Dr. Haskin's testimony which states:
[I]f Mrs. Taylor had rapidly deteriorated and died upon leaving Dr. Sauls' office, rapidly being within an hour, I think that the argument could be that she had sustained a terrible injury and even under the best care, the injuries progressed to the point where she could not be save. However, with this history that Mrs. Sauls (sic) in fact, rode in the car, stopped at two stops, ... and then went home and was helped in and out of bed a couple of times, there was a sufficient amount of time to say that she easily could have gone to a reputable hospital, had the x-rays, In the spinal fracture identified, placed in spinal immobilization, and probably had a good outcome."
Considering the record in its entirety, we find that the jury's findings were reasonable in concluding that Dr. Sauls' breach of the standard of care contributed to Mrs. Taylor's death.

DAMAGES: DECREASE AMOUNTS AWARDED TO PLAINTIFFS
Dr. Sauls, in his reply brief, asserts that the $250,000.00 damage award to Mr. Taylor was excessive. However, Plaintiffs argue that Dr. Sauls failed to raise this assignment of error in his original brief, thus forfeiting this assignment of error.
Although Dr. Sauls failed to thoroughly brief this assignment in his original brief, he does state in his original brief that the issue is reserved for the reply brief. We find this sufficient to preserve the issue for review. It is well established that "[t]he role of an appellate court in reviewing awards of general damages is not to decide what it considers an appropriate award, but to review the exercise of discretion used by the trial court." Maddox v. City of Oakdale, 99-726, p. 6 (La.App. 3 Cir. 11/3/99); 746 So.2d 764, 769, writ denied, 99-3388 (La. 2/11/00); 754 So.2d 936; (Citing Andrus v. State Farm Mut. Auto. Ins. Co., 95-0801 (La. 3/22/96); 670 So.2d 1206). "Each case is different, and the facts and circumstances particular to the case should determine the adequacy or inadequacy of the award under consideration. The discretion vested in the trier of fact is great, so that an appellate court should rarely disturb an award of general damages." Maddox, 99-726 p. 6, 746 So.2d at 769; (Citing Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994)). Considering the well established jurisprudence and the facts presented, we affirm the trial court's award of damages.
LPCF petitions this court to lower the amount of damages awarded to the deceased's children. Plaintiffs, Martha Varnell and Melva Jean Boyett, petition this court to increase their award of damages because they "visited their mother on a frequent basis." LPCF emphasizes that there was minimum contact between the major children and the deceased, thus the award of $10,000 to each child is excessive.
This is a factual issue and the trial court was in the best position to evaluate credibility of the witnesses concerning the extent of the relationship with their mother. Applying the rules set forth in Maddox, Youn, and Andrus and the above discussion, the trial court did not err in its award of damages to the deceased's children. Likewise, in considering Plaintiffs' request to increase the children's award, we find that the award of damages is adequate.

CREDIT FOR INSURANCE PAYMENTS
Defendants, Sauls and LPCF, argue that the trial court erred in its failure to provide a credit for insurance payments provided by other insurers. It was stipulated that Plaintiffs, Kay Crain, Mary B. Van Orden, Melva Boyett, Bettie Folsom, Martha Varnell, and John Rayburn each received $7,000.000 from the liability insurer of the beauty salon. While Mr. Taylor *694 received a total of $50,071.91 in insurance benefits which included proceeds from Mrs. Taylor's life/hospitalization insurance and the beauty salon's liability insurer. Considering the settlement received from the beauty salon, it appears that an additional tortfeasor was not considered in the jury's allocation of fault.
La.R.S. 22:1386, in pertinent part, provides:
A. Any person having a claim against an insurer under any provision in an insurance policy, other than a policy of an insolvent insurer which is also a covered claim, shall be required first to exhaust his rights under such policy. Such other policies of insurance shall include but shall not be limited to liability coverage, uninsured or underinsured motorist liability coverage, or both, hospitalization, coverage under self-insurance certificates, coverage under a health maintenance organization or plan, preferred provider organization or plan, or similar plan, and any and all other medical expense coverage. All entities that are prohibited from recovering against the association, as specified in R.S. 22:1379(3)(b), shall also be considered insurers for purposes of this Subsection. As to the association, any amount payable by such other insurance shall act as a credit against the damages of the claimant, and the association shall not be liable for such portion of the damages of the claimant.

(Emphasis added).
The term "association" is defined by La. R.S. 22:1379(1) as the Insurance Guaranty Association and is commonly known as "LIGA."
The supreme court in Senac v. Sandefer, 418 So.2d 543, 545 (La.1982) stated:
The purpose of this provision is to prevent double recovery. The issue before this court, therefore, is whether double recovery will result from a judgment against a third party tortfeasor awarding a claimant, who has already received workers' compensation disability benefits, general damages which do not include lost wages or medical expenses."
(Citations omitted).
The court in McMahon v. Louisiana Ins. Guar. Ass'n, 596 So.2d 1384, 1389 (La.App. 1 Cir.), writ denied, 604 So.2d 970 (La.1992) stated, "[t]he purpose of this provision is to prevent double recovery ... in determining whether LIGA is entitled to a credit against its liability, the focus should be on whether double recovery will result if a credit is not allowed." citing Senac, 418 So.2d 543. "The provisions of the Insurance Guaranty Association Act must be interpreted to protect claimants and policyholders and to advance their interests rather than the interests of the association." Senac v. Sandefer, 418 So.2d at 546 (Citations omitted); La.R.S. 22:1376.
In the instant case Plaintiffs were paid hospitalization insurance, funeral/burial insurance, and liability insurance from the beauty salon's insurer. We will address each payment separately.

HOSPITALIZATION AND FUNERAL EXPENSES
Mr. Taylor received insurance proceeds for both hospitalization expenses and funeral expenses. Applying the test set forth in Senac, a credit is only allowed if there is double recovery. In the instant case, the issues of hospitalization and funeral costs were not included in the jury's award of damages. The record indicates that evidence relating to these issues were not presented to the jury. Thus, these damages were not considered by the jury. Accordingly, we find that there is no double recovery, and Defendant is not entitled to a credit for proceeds received in relation to hospitalization and funeral costs.

BEAUTY SALON'S LIABILITY INSURANCE PROCEEDS
La.R.S. 22:1386, in pertinent part, provides "[a]ny person having a claim ..." The critical language is "a claim." Considering that La.R.S. 22:1386 is to be construed *695 liberally, the clear and unambiguous language of the statute refers to a particular claim against a particular tortfeasor and attempts to prevent Plaintiff's from recovering double monies on that claim in regards to the particular tortfeasor. The trial judge in his reasons explained:
The plaintiffs in this case were awarded a sum of money by State Farm Insurance prior to trial for the negligence of a business owner relative to hazardous conditions of a step outside for their beauty shop, which caused plaintiff (Mrs. Taylor) to fall and injure herself.
. . . .
Counsel for the descendants of the deceased argues that there are two separate claims asserted in litigation here. One arising from the negligence of the insured beauty shop owner for maintaining a hazardous condition on the premises, which caused the initial injury, and one arising from the negligence of the physician for failure to meet the standard of care imposed upon him, which resulted in the death of the decedent. Defendant's claim for credit again fails to meet the standard duplication of recovery.
Additionally, we note that the beauty salon's fault was neither argued to the jury nor was fault apportioned to the beauty salon. Allowing a credit on Dr. Sauls' behalf for separate and distinct claim and a claim not raised at trial would run afoul to the basic principle and purpose of La. R.S. 22:1386. Accordingly, we hold La. R.S. 22:1386 is not triggered under the facts of this case.

PLAINTIFFS ANSWER: CONTRIBUTORY NEGLIGENCE AND INCREASE IN DAMAGES
Plaintiffs contend that the jury erred in failing to allocate Dr. Sauls with 100% fault. La.Civ.Code art. 2323(A) requires determination of the fault of all persons causing or contributing to the injury. Allocation of fault is a factual determination subject to the manifest error rule. An appellate court may not set aside a jury's finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993).
In the instant case, the jury heard Mr. Taylor's testimony concerning Mrs. Taylor's refusal to go to the hospital. Additionally, Mr. Taylor admits that he was present on the one occasion when Dr. Sauls suggested that Mrs. Taylor should go to the hospital. Furthermore, as the day progressed, it was clear to both Mr. and Mrs. Taylor that Mrs. Taylor's condition had not improved. In fact, Mrs. Taylor could not move about the house without Mr. Taylor's assistance. Considering the totality of the evidence, we find that the jury did not err in its allocation of fault.

DECREE
In accordance with the foregoing discussion, we find that the trial judge did not err in denying Defendant's motion for continuance and in admitting Dr. Haskin's expert testimony. We also find that the Plaintiffs submitted sufficient evidence to establish the standard of care owed by Dr. Sauls. Additionally, the jury did not err in finding that Dr. Sauls breached the standard of care and that breach was the legal cause of Mrs. Taylor's death, in the amount of damages awarded to Plaintiffs, and in assessing fault to Mr. and Mrs. Taylor. Finally, we affirm the trial judge's ruling that Defendant is not entitled to a credit for amounts Plaintiffs received as a result of other, separate and distinct, claims. All costs of this proceeding are assessed against the defendant, Dr. J. Lane Sauls.
AFFIRMED.
THIBODEAUX, J., concurs in part and dissents in part and assigns written reasons.
AMY, J., dissents and assigns reasons.
*696 THIBODEAUX, J., concurring in part and dissenting in part.
I concur in the imposition of liability against Dr. Sauls in the award of $250,000.00 to the surviving spouse. However, I disagree with the imposition of comparative negligence on the surviving spouse and the decedent and also disagree with the amount of damages given to each surviving child. I would assess one hundred percent of the fault to Dr. Sauls and would increase the damages from $10,000.00 to $50,000.00 for each surviving major child.
AMY, J., dissenting.
I respectfully dissent from the majority decision, finding merit in the defendant's assertion that the trial court committed reversible error in denying the continuance due to the unavailability of a member of the Medical Review Panel. La.R.S. 40:1299.47(H) provides:
Any report of the expert opinion reached by the medical review panel shall be admissible as evidence in any actions subsequently brought by the claimant in a court of law, but such expert opinion shall not be conclusive and either party shall have the right to call, at his cost, any member of the medical review panel as a witness. If called, the witness shall be required to appear and testify. A panelist shall have absolute immunity from civil liability for all communications, findings, opinions and conclusions made in the course and scope of duties prescribed in this Part.
(Emphasis added.) Furthermore, La.Code Civ.P. art. 1602 provides:
A continuance shall be granted if at the time a case is to be tried, the party applying for the continuance shows that he has been unable, with the exercise of due diligence, to obtain evidence material to his case; or that a material witness has absented himself without the contrivance of the party applying for the continuance.
(Emphasis added.) In determining whether to grant or deny a continuance, the trial court considers the party's diligence and good faith, as well as whether reasonable grounds exist. Hughes v. Bailey, 29,314 (La.App. 2 Cir. 4/2/97); 691 So.2d 359.
I find that, given the circumstances surrounding the absence of the witness, failure to grant the continuance was reversible error by the trial court. Foremost among the relevant facts is that the defendant asked for a continuance due to the hospitalization of not just any witness, or even just any expert, but an expert who was also a member of the Medical Review Panel. As can be seen above, the plain wording of La.R.S. 40:1299.47(H) requires that a party shall be permitted to call a member of the panel as a witness. In this situation, the determination to not grant a continuance effectively prevented the defendant from exercising an express statutory right. Neither am I persuaded by any argument that the defendant was not prejudiced by his inability to call Dr. Hearn because the other two members of the panel were called or that his testimony was not material to the case. First of all, as a member of the Medical Review Panel and a practitioner in a community similar to that of the defendant, Dr. Hearn's testimony was clearly material. Furthermore, even if we could not say that the trial court abused its discretion, which I believe we can and should, the legislature has determined the litigants shall have access to the testimony of the panel; a right they should be able to rely on. Lastly, there is no indication in the statute that a party's right to call members of the Medical Review Panel is somehow eroded if that testimony may ultimately be cumulative. Rather, the statute clearly provides only that a party has the right to call any member of the panel. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in *697 search of the intent of the legislature." La.Civ.Code art. 9.
Neither does this appear to be a case where the defendant squandered court-provided opportunities to present the testimony of the panel member. In Hughes, 29,314; 691 So.2d 359, the second circuit found no abuse of the trial court's discretion in refusing to grant a continuance so that the testimonies of two panel members could be presented. However, the facts of Hughes indicate that attempts were made to accommodate the calling party. The court explained:
Appellant applied for the physician's subpoenas seven days prior to the trial. The subpoenas were delivered one and one-half to two days prior to the trial. Two of the physicians scheduled to appear were located in Shreveport. Mrs. Hughes made no attempt to provide accommodations for them. The trial was held on April 25, 1996. The court stated for the record that it would keep the case open until May 28, 1996. Mrs. Hughes would then submit Drs. Anglin and Overdyke's [members of the Medical Review Panel] depositions, and file them for the court's review. Opposing counsel agreed to do them by telephone, eliminating some of Mrs. Hughes' expense. At the close of her case, Mrs. Hughes chose not to submit the additional depositions. The court explained to her that she may close her case, or wait until May 28th when she filed the deposition. Mrs. Hughes chose to close her case in chief. The trial court did not abuse its discretion by not granting the appellant a continuance.
Id. at p. 9; 364. This case does not appear to be one in which other options were made available to the defendant. In my view, the failure to permit the defendant to exercise the statutory right to call the members of the medical review panel under these facts was an abuse of discretion requiring reversal.
Additionally, I find no merit in the plaintiff's argument that the issue is now moot. Although Dr. Hearn would no longer be available to testify, as the plaintiffs indicate in brief that he died subsequent to trial, the defendant would have an opportunity to prepare his case to account for Dr. Hearn's absence, an opportunity he did not have in the first trial. Accordingly, I find that the judgment should be reversed and the consolidated cases remanded for a new trial.
Due to my finding that a continuance was required, I do not reach the remaining assignments of error addressed by the majority.
NOTES
[1] Although we address both matters in this opinion, see Kay Crain, et al. v. Dr. J. Lane Sauls, 991437 (La.App. 3 Cir. 9/6/00); 772 So.2d 697, 698, for decretal information in the companion case.
[2] Each of the children, except Billie Jo Chamblee, was awarded damages. Ms. Chamblee did not appear at trial due to illness and, because of insufficient evidence as to her relationship with her mother, was dismissed by a directed verdict rendered by the court.